## Gibson v. Commonwealth.

(Decided April 21, 1933.)

602

C. A. NOBLE, J. L. DIXON and L. D. LEWIS for appellants.
BAILEY P. WOOTTON, Attorney General, and FRANCIS M. BURKE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY HOBSON, COMMISSIONER—
Affirming.

Kelly Gibson and Ed Gibson were indicted in the Leslie circuit court for the willful murder of Charles Napier, and on the trial of the case were found guilty and their punishment fixed at life imprisonment. They appeal.

Briefly stated, the facts are these: The shooting occurred on Sunday June 12, 1932, about 1:30 p. m. Appellants were working for Clarence Osborne, who lived near the mouth of Pig Pen fork, a branch of Hell-For-Certain creek in the upper part of Leslie county. They lived in the house with him and were sitting on the porch of the house. Monroe Napier and Charles Napier were at the home of a relative about a quarter of a mile above Osborne's house and came riding down the stream on horseback. As shown by the proof for the commonwealth, when they got within seventy-five yards of the house the defendants opened fire on them from the porch and one of the windows of the house, killing Charles Napier, when both the Napiers were unarmed and in their shirt sleeves and were simply riding down the creek disturbing no one.

On the other hand, the proof for the defendants is that the Napiers were hostile to them; armed; had made threats against them; and when they got within about forty yards of the house began shooting at them on the porch, and that they shot simply in self-defense. One ground of reversal relied on is that the court erred in admitting incompetent evidence and excluded competent evidence offered by the defendant. The matters complained of are these:

Monroe Napier went on the stand as a witness and made this answer:

"When we got down somewhere in about seventy-five yards of Clarence Osborne's house Kelly Gibson and Ed Gibson and Virgil Gibson began shooting at us. Kelly was shooting out of a window upstairs. They shot somewhere between three or four shots before I found out they were shooting at us, and I told Charlie Napier to wheel back and try to get away and Charlie wheeled his horse and some one of these three shot him. They hit him right in the crossing of the gallus and it

come out right in here, and he fell off his horse and I run up to him and he told me to run and get away; that there wasn't nothing I could do for him they had killed him."

The defendants moved the court to exclude from the consideration of the jury and to admonish the jury not to consider the above answer. The court being advised overruled the motion; to which ruling of the court defendants except.

It is insisted that proof of what Charlie Napier said, not in the presence of the defendants, was improperly admitted; but this occurred, as shown by the evidence, while the shooting was going on and was a part of the res gestæ. In addition to this, the defendants admitted the shooting, and the only question in the case was whether they shot in self-defense, and this statement certainly did not prejudice them on that question. Practically the same thing occurred when Hargis Napier was on the stand and for the same reason was not prejudicial to the defendants.

When Henry Couch was on the stand, he testified to seeing the defendants soon after the shooting and being asked by the commonwealth to tell what they said. He said:

"I believe Charlie Helton asked them about it and they said they had it to do. Ed Gibson said he killed Charlie Napier with a high powered gun. They shot at Monroe Napier too and said they would have killed him if he had not run off."

On cross-examination of the witness this occurred:

"Q. I want you to go ahead and tell the jury all they said there in that talk. (The plaintiff objects; the court overruled; the plaintiff excepts.) A. They just said when Monroe and Charlie was coming down the branch and made for their pistols they beat the boys to it and killed him first. (The plaintiff objects and moves the court to exclude the answer from consideration of the jury. The court overruled; plaintiff excepts.)

"Q. I will ask you if they made any statement about who was there? (Plaintiff objects; Court sustains and the defendants except.) In Avowal:

A. Just them two and old man Cider Bill, I don't know what his name was.

"Q. Was the answer you just made to the stenographer in avowal a part of the talk that took place when Ed Gibson and Kelly Gibson came to George Osborne's house? (Plaintiff objects; court overruled; plaintiff excepts.) A. Yes, sir.

"Comes the defendants and move the court now to permit the jury to hear the avowal that the witness made. The court being advised overrules the motion; to which ruling of the court the defendants except.

"Comes the plaintiff and moves the court to exclude from the consideration of the jury and to admonish the jury not to consider the statements coming from the witness, Henry Couch, on cross examination because the same are self serving statements made by the defendants. The court being advised overrules the motion; to which ruling of the court the plaintiff excepts."

It is insisted that the court did not allow the jury to hear what Couch testified the defendant said as to the shooting, and that this was only gotten before the court in an avowal. But it will be observed that the court overruled the motion to exclude this from the consideration of the jury. The fair meaning of the record is that the answer to the question as to defendants' statement about who was there, was in avowal and that this only was excluded. This was not prejudicial to the defendants, for the other evidence, which was uncontradicted, shows this clearly. The other statements brought out on the cross-examination were not excluded. There is therefore no force in this objection.

When Pearl Woods was on the stand, she testified to certain statements made by the defendants to her. On her cross-examination she was asked to tell all they said in their talk. The commonwealth objected. The court sustained the objection and the defendants excepted. But there is no avowal as to what the witness would have said and there is no showing that they in fact said anything more than she had testified to. The rule is well settled that there must be an avowal as to the evidence excluded in order that this court may know whether or not it was prejudicial to the defendants, and

in fact there should always be an avowal so that the circuit court may properly understand the matter. Hill v. Com., 191 Ky. 477, 230 S. W. 910.

When Kelly Gibson, the defendant, was on the stand he was asked on cross-examination these questions as to what occurred at the burial of Claud Holland:

"Q. Was Farmer Collins there at the burying? A. Yes, sir.

"Q. You didn't make him leave there? A. No, sir.

"Q. He left didn't he? (Defendants object; court overruled and the defendants except.) A. Yes, sir."

This was some time before the homicide and threw no light on it. It was immaterial matter that might have been left out, but its admission prejudices no substantial right of the defendant.

On examination of the defendant Ed Gibson, the commonwealth asked him if he and the deceased had not had some previous trouble over a hog case, and answered, "Yes." The defendants then moved the court to permit the witness to tell about the hog trouble. The court refused this and the defendant excepted to the ruling of the court, but there is no avowal as to what he would have stated and the court has no means of knowing whether the answer would have been of any benefit to appellants.

When the defendant's witness James Jones was on the stand he was asked on cross-examination this question:

"Q. Is their general moral reputation from what you have heard the people say good or bad? A. Bad."

The defendants insist that this evidence was improper; but they had testified in the case, and their credibility as witnesses could be attacked as any other witness by proof that they were men of bad moral character. In fact, there is no exception in the record to this question and answer, although there was an exception to a previous question before the witness had stated the extent of his knowledge of the reputation of the defendants

among their neighbors. A number of other witnesses were afterwards introduced on the same line, and no exception was taken to their evidence.

When Joe Begley was on the stand, in rebuttal, and stated that Luther Strong, a witness for the defendant, was not present on the occasion referred to in his testimony, he was asked on cross-examination to state who was there. The court sustained an objection to the question. The defendant excepted. He complains that the witness was not required to answer the question as this would have tested his recollection. But there was no avowal as to what the testimony would have been.

When Henry Davidson was on the stand, in rebuttal, he stated that the defendant told him that the Napier boys fired a shot. There was no objection to the question or answer, but the witness was asked to tell all that they said about that trouble. The court sustained the objection and the defendants excepted, but there is no avowal as to what the witness would have said.

By instruction No. 4 the court told the jury that they had a right to protect their home from an unlawful assault and added these words:

"And if you shall believe from the evidence in this case beyond a reasonable doubt that the deceased, Charlie Napier, or Monroe Napier, or either one of them assaulted the home of the defendants and that the defendants, or either one of them, in repelling that assault, met force with force, and used no more force than was necessary to repel the assault by the deceased Charlie Napier or Monroe Napier, and that in so doing the deceased was shot and killed, then you ought to acquit the defendants upon the grounds of defense of home, or apparent necessity therefor."

The words "beyond a reasonable doubt" should not have been used in this instruction. The defendant in a criminal case is not required to make out his defense beyond a reasonable doubt. He is entitled to an acquittal if on the whole case there is a reasonable doubt of his guilt. The instruction was therefore erroneous, but it was not prejudicial to the defendants on the whole case; for they themselves both testified that they shot the deceased in their self-defense when he and his

brother were shooting at them. There was nobody in the house but them and another man, who was asleep. There was no attack really on the house. If the evidence for the defendants was true, the Napiers simply came down the creek armed and made an attack on them. This was the real question in the case and the only defense shown by the defendants in their own testimony. Under the evidence no instruction on the defense of the house should have been given.

Appellants also complain of instruction 3 on self-defense, which was in these words:

"If you shall believe from the evidence in this case that at the time the defendants, or either one of them, or Virgil Gibson, shot and killed the deceased, Charlie Napier, if you shall believe from the evidence beyond a reasonable doubt that either one of them or Virgil Gibson did so do, the defendants, or either one of them believed or had reasonable grounds to believe in the exercise of a reasonable judgment that they, or either one of them were then and there in danger of death or the infliction of some great bodily harm at the hands of Charlie Napier or Monroe Napier, and the defendants, or either one of them believed and had reasonable grounds to believe in the exercise of a reasonable judgment that it was necessary to so shoot and kill Charlie Napier or Monroe Napier in order to avert that danger, real or apparent, then you ought to acquit the defendants upon the grounds of self defense or the apparent necessity therefor."

Appellants insist that the words "that danger, real or apparent," left the jury to determine whether the danger was apparent to the jury and did not present to the jury the idea that the defendants had a right to act on what appeared to them at the time. But reading the instruction as a whole, the court cannot see that the jury could have misunderstood the instruction; for in the preceding part the jury were plainly told that if they or either of them believed, or had reasonable grounds to believe, that either of them was in danger of death or some great bodily harm, then they had the right to avert that danger, real or apparent. The grammatical construction of the instruction, as a whole, necessarily requires that the words "that danger" refer to the danger set out in the previous part of the

instruction, and they were told by the instruction that they had a right to defend themselves if they believed, or had reasonable grounds to believe, "that danger" existed. The court is unable to see that under the proof here the defendants' substantial rights were prejudiced in any wise by the form of the instruction. Mullins v. Com., 108 S. W. 252, 32 Ky. Law Rep. 1216; Banks v. Com., 196 Ky. 639, 245 S. W. 296; McCurry v. Com., 205 Ky. 211, 265 S. W. 630.

The instruction condemned in Poe v. Com., 244 Ky. 649, 51 S. W. (2d) 937, reads very differently. In the forms of approved instructions the words are "danger, real or to the defendant apparent." See Hobson on Instructions, sec. 758. But under the facts of this case the difference was not important; for the case simply turned on the question whether the defendants shot in self-defense after the Napiers shot at them, or whether they shot at the Napiers when they were unarmed, making no attack but simply riding along unconscious of any danger. The verdict of the jury indicates that the jury took the latter view of the facts.

Under the statute (Criminal Code of Practice, sec. 334) permitting appeals to this court in felony cases, it is expressly provided that a judgment of conviction shall not be reversed unless for some error in the trial which was prejudicial to the substantial rights of the defendant. Upon the whole case here the court is unable to see that there was any error of the court prejudicial to the substantial rights of the defendants.

Judgment affirmed.