### CARPENTER v. COMMONWEALTH.

Court of Appeals of Kentucky.
March 27, 1953.

Ollie James Cockrell, Jackson, E. B. Rose, Beattyville, for appellant.

J. D. Buckman, Jr., Atty. Gen., and William F. Simpson, Asst. Atty. Gen., for appellee.

STEWART, Justice.

Herbert Carpenter was convicted in the Breathitt Circuit Court of the murder of Roscoe Linden and sentenced to life imprisonment. He has appealed from the judgment entered upon the verdict, urging three grounds for reversal: (a) The verdict is flagrantly against the evidence and is without sufficient evidence to support it; (b) incompetent and prejudicial testimony was admitted; and (c) the court erred in failing to give an instruction on defense of the home.

The alleged crime occurred on December 15, 1951, at Carpenter's home on Frozen Creek in Breathitt County, a few miles distant from Jackson. Herbert Carpenter and his cousin, Roscoe Linden, had gone to Jackson and from there to Hazard early that morning to procure some whiskey. They drank considerably during the trip and they returned to Carpenter's home shortly after the noon hour where they ate lunch and afterwards continued drinking whiskey. In the course of the afternoon they became intoxicated and Linden went to sleep sitting in a chair. Between 2:30 and 3:00 p. m. Linden was fatally shot; he received one bullet wound in the groin and two in the lower part of the abdomen.

The only eyewitness to the difficulty, if he can be called such, who was introduced by the Commonwealth, was a 15-year-old boy, Vergil Taulbee. He testified he and his two younger brothers went to the Carpenter home about 2:30 p. m. to deliver an order of groceries. He said he alone entered the house and, after he was in the living room, he saw Carpenter approach Linden, who was sleeping in a chair, and jerk him to his feet. He heard Carpenter then say: "If you are mad, I want to settle this with you." They began scuffling about the room and soon Linden began to cry and begged Carpenter to let him go home. Carpenter is quoted as saying: "No, you are not going home, I want to settle this with you." After that remark, Carpenter knocked Linden down and started dragging him toward the bedroom. At this juncture, according to young Taulbee, Carpenter's wife, who was in the room and who became alarmed, requested him to help her get the children out of the house, saying: "Herbert is going to kill Roscoe." After he had assisted her, he stated he got in his wagon with his two brothers and drove down the hollow to Brownloe Lin-

den's home, a distance of a half-mile, and told him what was happening at the Carpenter house.

Brownloe was a brother of Roscoe and the latter had made his home with him. Upon receipt of news of the affray, Brownloe, along with two neighbors, Press Taulbee and A. B. Lovely, started immediately on their way to the Carpenter residence in the wagon young Taulbee had been driving. Brownloe testified that, as the group was leaving his home, they met Mrs. Carpenter who told them she had shot Roscoe Linden. As they continued on their journey they encountered Carpenter himself. The latter pulled a pistol, which turned out to be the same one that had been used to shoot Roscoe Linden, and made threatening remarks to those in the wagon, but no further mishap took place. Carpenter and his wife joined those in the wagon and they traveled on to Carpenter's home where they found Roscoe Linden sitting in a chair near a large pool of blood.

Linden was taken to a doctor and then to a hospital. He died without making a statement. Certain marks were found on his body by a doctor who examined him. One ear was discolored, his shoulder had a severe bruise on it and the "hide had been clawed out" just below his Adam's apple. Carpenter and his wife explained these marks by saying that the two men had engaged in their usual playful pastime of scuffling before the fatal incident occurred. They both claimed that Vergil Taulbee, the Commonwealth's chief witness, had also participated in this sportive pranking.

Carpenter and his wife testified that Linden had attacked Mrs. Carpenter with a large knife while Carpenter lay in a drunken sleep. Mrs. Carpenter supposedly seized her husband's .32 caliber pistol from the wall and shot the deceased in self-defense. Carpenter, aroused by the shot, disarmed his wife and sent her for help.

Carpenter argues that in view of the fact that the Commonwealth had no eyewitness to the shooting, and since he and his wife, the only actual eyewitnesses on the scene, testified that she killed Linden to protect herself, there could not possibly have been enough evidence to sustain a conviction.

In Strong v. Commonwealth, 297 Ky. 591, 180 S.W.2d 560, 561, we held that " * * * any evidence, although slight or circumstantial which goes toward the establishment of guilt, is sufficient to carry the case to the jury and to sustain a conviction * * *." Nor is it necessary that there be eyewitnesses to a murder in order for a person to be convicted of it. Fields v. Commonwealth, 310 Ky. 162, 219 S.W.2d 991. A judgment of conviction will not be reversed on the ground that the evidence is insufficient to support it unless the verdict is palpably against the evidence, and this is so although the evidence be purely circumstantial. Hall v. Commonwealth, 152 Ky. 812, 154 S.W. 397.

The testimony of the witness, Vergil Taulbee, was itself sufficient to carry the case to the jury. He saw the two men in conflict, with Carpenter resorting to acts and speech that plainly indicated he was intent on doing bodily harm to Linden. Mrs. Carpenter, on the other hand, expressing the belief that her husband was about to take Linden's life, manifested that her chief concern was to conduct the children to a place of safety. The husband was the aggressor, the wife was fleeing from the brawl, if we are to believe young Taulbee. Before the stage as thus set could have scarcely been changed, the fatal deed was done, and Mrs. Carpenter appeared at Brownloe's home as he and his neighbors were driving off, and the husband was met shortly thereafter holding in his hand the pistol with which Linden had been shot. Certainly this evidence was amply sufficient to warrant a submission of the case to the jury and to support the verdict that resulted.

Carpenter's next complaint is directed toward the introduction of certain testimony which he maintains was highly prejudicial to his case. On cross-examination, the Commonwealth's attorney was permitted to thus interrogate Mrs. Carpenter: "I will ask you if your boy, Han, didn't say, 'Now Mother, you know you didn't shoot him'

and you told him to get out and shut his mouth?" The question was objected to, the objection was overruled and an exception was taken. Mrs. Carpenter denied any such incident had occurred. James E. Combs, a detective for the Kentucky State Police, was then recalled to the stand and asked whether the foregoing statement by the boy was made to Mrs. Carpenter in his, Combs', presence. Again an objection was interposed, but it was overruled and an exception reserved. Combs was allowed to testify he heard the boy make the statement. The Commonwealth did not introduce the boy, Han, as a witness. It was announced by the court that this hearsay remark was admitted for the sole purpose of impeaching the credibility of Mrs. Carpenter as a witness, assuming it tended to do so. At the close of all the testimony the court reversed its ruling, withdrew the evidence from the jury and at the same time admonished the jury not to consider it for any purpose whatsoever. Carpenter at that time moved that the swearing of the jury be set aside and that the case be continued, but the court, upon considering this motion, overruled it.

■ It is undoubtedly true in this jurisdiction that a conviction for a criminal offense will not be set aside for every error occurring during the trial. But, if this Court is satisfied an error has prejudiced the substantial rights of the accused, then a reversal is in order. See Criminal Code of Practice, §§ 340 and 353. Where testimony is improperly admitted but later withdrawn from the jury with an admonition not to consider the evidence, it is ordinarily presumed that the jury was controlled by such admonition and no prejudice resulted therefrom. See Bailey v. Commonwealth, 294 Ky. 355, 171 S.W.2d 1005; Rowlett v. Commonwealth, 222 Ky. 695, 2 S.W.2d 378. However, this rule is not infallible. There may be instances where even the action of the court in withdrawing such evidence can in nowise remove the devastating effect created under the circumstances, and we have so held in a long line of cases. Powell v. Commonwealth, 308 Ky. 467, 214 S.W.2d 1002; Kennedy v. Commonwealth, 14 Bush 340; Coppage v. Commonwealth, 3 Bush 532. It would be difficult to comprehend a situation wherein a statement such as that purportedly made by the young boy and admitted in the manner we have described could be any more detrimental, especially in view of the contention by Carpenter, supported by his wife, that she, not he, had done the shooting. By the time the admonition was given the damage had been done, and we doubt if it was possible for any juror under the circumstances, no matter how fair-minded he might be, to disabuse his mind of the effect of such inflammatory testimony. For the reason indicated, the judgment must be reversed.

■ As there must be another trial, we deem it necessary to comment on Carpenter's last complaint, namely, that he was entitled to an instruction on defense of his home. He relies upon three cases to sustain this argument. Without mentioning these cases by name, it is sufficient to say that each one is distinguishable factually from the one under consideration. All three involved killings by one who shot from his home when his habitation was being fired upon from the outside. There is no evidence Linden came into Carpenter's house armed. Even Carpenter's wife, who accepted all the blame for the shooting, testified she got the pistol for protection when Linden attacked her with an old trench knife Carpenter had hung on the living room wall and that the weapon was discharged while he was attempting to wrest it from her. The most that the facts warranted was a self-defense instruction. This being the case, the court properly refused to give a defense of the home instruction. Gibson v. Commonwealth, 248 Ky. 601, 59 S.W.2d 573.

Wherefore, the judgment is reversed with directions that it be set aside and for further proceedings consistent with this opinion.