**Eric Lynn GRUNDY, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**No. 1998–SC–0855–MR.**

Supreme Court of Kentucky.

Aug. 24, 2000.

As Modified Sept. 21, 2000.

---

**24.** *Id.* at 949 (emphasis added).

Julie Namkin, Assistant Public Advocate, Frankfort, for Appellant.

A.B. Chandler, III, Attorney General, William L. Daniel, II, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, for Appellee.

## MEMORANDUM OPINION
## OF THE COURT

A Marion County Circuit Court jury convicted Grundy of first degree burglary, second degree assault, first degree robbery, determined that the appellant was a first degree persistent felony offender (PFO), and recommended that Grundy serve concurrent sentences of thirty-five (35) years, twenty (20) years, and thirty-five (35) years respectively. The trial court entered judgment in accordance with the jury's recommendation and sentenced Grundy to a total term of imprisonment of thirty-five (35) years. Grundy thus appeals to this Court as a matter of right, and, after a review of the record, we affirm the judgment of the Marion Circuit Court.

## BACKGROUND

The Marion County Grand Jury returned indictments against Grundy and four other individuals for first degree burglary, first degree robbery and second degree assault. The Commonwealth alleged that, in September 1997, Grundy, in complicity with others, broke into a motel room belonging to two out-of-town construction workers, Johnny Marlow and Glen Fitch, and, after demanding money and injuring Marlow by hitting him with a chunk of concrete, fled with Fitch's billfold. Grundy defended against the charges by admitting that he had punched Marlow with his fist, but claiming that he did so only because he had heard reports that the construction workers had made disparaging remarks to his ex-girlfriend about their interracial relationship. The trial court granted Grundy's motion for a separate trial from his co-indictees. The Commonwealth's evidence at trial consisted of the testimony of the alleged victim and Lebanon Police Officer Jeff Waters. Marlow testified that, on the night of the incident, he and Fitch were watching television and drinking beer in their motel room when the door to the room slammed open and Grundy, accompanied by four other African–American men, entered and demanded money. According to Marlow, he and Fitch denied they had any money, but Grundy twice repeated his demand. Marlow testified that after Grundy's third demand, Fitch shouted something and, as Marlow turned towards Fitch, Marlow felt an object hit his head. Marlow explained that Fitch then threw his wallet towards the intruders and the men then ran off with it. Marlow traveled to the hospital and received seven stitches. Marlow advised both hospital personnel and Officer Waters, who initially interviewed Marlow at the hospital, that he had been injured by brass knuckles.

Marlow and Fitch continued to stay in the motel room and Marlow testified that, while Fitch prepared to shower the next evening, the two men located a fist-sized piece of concrete in Fitch's laundry basket which they suspected may have caused Marlow's injuries. Marlow explained that Grundy could not have hit him with a fist because Grundy stood about six feet away at the time he struck Marlow. Marlow testified that he removed a piece of skin from the piece of concrete and placed the

object inside of a cooler which he kept in the back of his car until he turned it over to the authorities shortly before trial approximately nine (9) months later.

Officer Waters testified that he did not find the piece of concrete during his investigation the night of the incident, but explained that he did not look inside the laundry basket. According to Officer Waters, Marlow informed him regarding the discovery of the piece of concrete within a couple of days, and that, although he asked Marlow to bring the object to the police station, Marlow returned home without turning over possession. The trial court permitted the Commonwealth to introduce the piece of concrete into evidence over Grundy's objection.

Grundy testified in his own behalf and explained that, on the evening in question, a friend told him that the construction workers at the motel had called his ex-girlfriend a "nigger lover." According to Grundy, he and a friend, Marcus Sanders, confronted Marlow outside the motel regarding the "nigger lover" comment, but that Marlow dismissed Grundy with a profanity and stepped inside his motel room. Grundy then testified that his friend kicked the motel room door open and that he, Grundy, hit Marlow with his fist and then ran away. Grundy specifically denied possessing a piece of concrete, entering the motel room, making any demands for money, or knowledge of any plan to take money from the two men. Another witness, Timmy Douglas, corroborated Grundy's version of the events.

The trial court instructed the jury it could find Grundy guilty of the indicted offenses, and, because Grundy denied using the piece of concrete or any other dangerous instrument, also submitted instructions regarding the lesser included offenses of fourth degree assault and sec-ond degree robbery. The jury returned verdicts of guilty as to the indicted offenses and Grundy now appeals to this Court.

## ADMISSION OF TANGIBLE EVIDENCE (PIECE OF CONCRETE)

■ Grundy argues that the trial court erred in allowing the Commonwealth to introduce into evidence, as Commonwealth's Exhibit 1, the fist-sized piece of concrete which the prosecution alleged that Grundy used to assault Marlow. The trial court held a hearing on Grundy's motion in limine to exclude the piece from evidence, and Marlow testified that he and Fitch had found the piece of concrete and that he had kept it in his possession continuously until trial. Grundy emphasizes that Marlow's testimony suggests that a non-testifying witness, Fitch, actually first discovered the piece of concrete and Grundy asserts this "gap" in the chain of custody, in combination with the non-traditional manner in which Marlow himself retained possession of the item prior to trial, rendered it inadmissible at trial. Additionally, Grundy argues that he suffered prejudice because the Commonwealth gave him inadequate notice of this evidence. After a review of the record, we find no error.

■ Grundy's argument rests on a common misconception regarding the authentication of tangible evidence, and we must emphasize that "a break in the chain of custody is not necessarily fatal to the admissibility of physical evidence."[1] KRE 901(a) governs the authentication and identification of evidence:

> The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.[2]

1. Robert G. Lawson, *Kentucky Evidence Law Handbook* § 11.00 at 592 (Michie 1993). *See also Rabovsky v. Commonwealth*, Ky., 973 S.W.2d 6, 8 (1998) ("[I]t is unnecessary to establish a perfect chain of custody." *Id.*).

2. KRE 901(a).

Under KRE 901, like its federal counterpart, a party seeking to introduce an item of tangible evidence need not satisfy an "absolute" identification requirement, and evidence is admissible if the offering party's evidence reasonably identifies the item.[3] We grant trial courts wide discretion over issues relating to the admissibility of tangible evidence because the foundation sufficient for admissibility will vary based on the nature of the item:

> If the offered item possesses characteristics which are fairly unique and readily identifiable and if the substance of which the item is composed is relatively impervious to change, the trial court is viewed as having broad discretion to admit merely on the basis of testimony that the item is the one in question and is in a substantially unchanged condition. On the other hand, if the offered evidence is of such a nature as not to be readily identifiable, or to be susceptible to alteration by tampering or contamination, sound exercise of the trial court's discretion may require a substantially more elaborate foundation. A foundation of the latter sort will commonly entail testimonially tracing the "chain of custody" of the item with sufficient completeness to render it improbable that the original item has either been exchanged with another or been contaminated or tampered with.[4]

Here, the tangible evidence consisted of a piece of concrete, an item virtually synonymous with "impervious to change," and the trial court did not abuse its discretion in finding that Marlow's testimony properly identified Commonwealth's Exhibit 1 as the piece of concrete found in his hotel room after the assault. Although the Commonwealth could have sought to introduce Fitch's testimony to further identify the item, we find that the trial court properly held that Marlow's testimony appropriately identified the item.

■ Likewise, we find no merit in Grundy's claim that he received inadequate notice of this evidence. We note that Grundy does not allege that the Marion County Commonwealth's Attorney violated any discovery order entered by the Court or any of the discovery provisions of the Kentucky Rules of Criminal Procedure. Instead, Grundy asks this Court to impute Officer Waters's actions to the Commonwealth and to reverse the convictions because Grundy did not receive all of the information necessary to prepare his defense. However, Grundy's argument stops short of alleging any intentional wrongdoing on the part of Officer Waters, and merely suggests fault by emphasizing the deviation from traditional police procedure and repeating the innuendo-laden claim that Officer Waters knew of the existence of the piece of concrete within a day or so of its discovery. Grundy cites to authority from this Court, *Ballard v. Commonwealth*[5] and *Anderson v. Commonwealth*,[6] but makes no allegation that the facts in this case are comparable to those in the precedent he cites.

■ Here, Officer Waters testified before the grand jury that Marlow had identified a piece of concrete as the object Grundy used to injure him, and the Commonwealth provided Grundy with a tran-

---

3. *See, e.g., United States v. Johnson,* 637 F.2d 1224 (9th Cir.1980); *United States v. Browne,* 829 F.2d 760 (9th Cir.1987).

4. *Beason v. Commonwealth,* Ky, 548 S.W.2d 835, 837 (1977). *See also Rabovsky v. Commonwealth, supra* note 1 at 8 ("[T]he integrity of weapons or similar items of physical evidence, which are clearly identifiable and distinguishable, does not require proof of a chain of custody . . . ." *Id.*).

5. Ky., 743 S.W.2d 21, 22–23 (1988) (Department of Human Resources, with knowledge of the investigating officer, withheld exculpatory portions of their records concerning the alleged child victim of sexual crimes, "including a medical report based on a physical examination of the complaining witness . . . stat[ing] that the physician had found no evidence of any sexual abuse." *Id*.).

6. Ky., 864 S.W.2d 909 (1993).

script of these proceedings several months before trial. In addition, the Commonwealth specifically notified Grundy's counsel of its intention to introduce the piece of concrete into evidence two weeks before trial, and Grundy's counsel indicated during the hearing on her motion in limine that she did not intend to make any allegation of prosecutorial misconduct and agreed that the prosecution properly notified her of the existence of this evidence as soon as the prosecution itself became aware of it. Grundy's counsel filed a motion in limine with respect to this evidence five days before the trial began, and thus had an opportunity to prepare for and address the admissibility issue. Grundy made no request that the trial court continue the trial to give him an opportunity to reformulate defense strategy, secure testing of the item, or seek other relief. All of these facts lead us to conclude that Grundy received adequate notice that the Commonwealth intended to introduce Commonwealth's Exhibit 1 as the dangerous instrument Grundy used to assault Marlow. We fail to see how Grundy's argument states a claim for our review, as Officer Waters's testimony before the grand jury belies any contention that he attempted to "sandbag" Grundy with the physical evidence. We find no error in the trial court's ruling allowing the Commonwealth to introduce the piece of concrete into evidence.

## IMPROPER "TESTIFYING" BY THE COMMONWEALTH

Grundy argues that the Commonwealth's closing argument strayed from reasonable inferences based upon evidence contained within the record and improperly bolstered the Commonwealth's case when the prosecution explained why the other construction workers did not testify at trial. During voir dire, the prosecutor stated: "Let me also tell you up front, Mr. Fitch will not be here today either. He had back surgery this past Wednesday.

He could not travel and he could not be here today, so you're not going to be hearing from him." After Grundy made an issue with respect to the Commonwealth's failure to provide testimony from the other construction workers staying at the motel, the Commonwealth argued during closing arguments:

She [defense counsel] wants to criticize why the other witnesses weren't here. I'll take responsibility for that. That's my decision. I could have subpoenaed Vince Meadows and I could have subpoenaed Jerry Smith. I know where they are. I've got their addresses and she does to. But I chose not to because they didn't have anything to add because they weren't in the room. They couldn't testify to who said what and who did what. They were next door separated by a wall. There was no point in dragging them down here and dragging this trial out by two or three hours to have them testify to some extraneous or irrelevant facts. I'll take responsibility for that. I put on the evidence that I thought was important and that you needed to hear to make a decision in this case. That's my job.

█ Instead of assigning this argument its own subheading and including "at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner," [7] Grundy asserts this argument in two paragraphs in the middle of nineteen (19) pages of an unrelated argument. Our review of the record indicates that Grundy made no objection to either the statement during voir dire concerning Fitch's unavailability or the statements during closing argument, and we conclude that Grundy did not preserve this error for our review. As the Commonwealth introduced substantial evidence of Grundy's guilt, we find that these isolated statements did not cause Grundy to suffer "manifest injustice" suffi-

7. CR 76.12(4)(c)(iv).

cient to justify relief pursuant to RCr 10.26.[8]

## COMMONWEALTH'S COMMENT ON DEFENDANT'S CREDIBILITY

■ Grundy similarly argues that the Commonwealth improperly commented on his motivation to lie when the prosecution stated during closing arguments that the jury should compare Grundy's credibility with Marlow's:

> I want you to look at the credibility of these witnesses and want you to look at what they had to gain and what they had to lose by lying to you.... What does Johnny Marlow have to gain? He doesn't have anything to gain.... So when you go back there in the jury room, I want you to look at credibility. Look at what Johnny Marlow has to gain and has to lose and look at what the defendant has to lose. The defendant has the greatest motive of all to sit here and lie to you. He could lose his freedom.... He has the greatest motive in the world to lie and that's what he's trying to do here.

Grundy argues that the Commonwealth's argument improperly diminished the defendant's presumption of innocence by inferring a motivation to lie from his status as a defendant.

We resolved this identical issue in *Tamme v. Commonwealth*[9] and held that the prosecution may comment on a testifying defendant's credibility:

> Nor did the prosecutor's argument that Appellant had a motive to lie contravene the presumption of innocence. The prosecutor is entitled to attack a defendant's credibility if the defendant testifies as a witness on his own behalf.

An accused who testifies on his own behalf is subject to the same rules as an ordinary witness.[10]

We find Grundy's argument unpersuasive and hold that the Commonwealth's comments regarding the relative credibility of the witnesses for the prosecution and the defense were entirely proper.

## MOTION FOR MISTRIAL

During the Commonwealth's direct examination of Officer Waters, the prosecutor asked if the investigations resulted in criminal complaints against Grundy and Officer Waters responded: "No, not at that time. I was also investigating Mr. Grundy on another case." Grundy's trial counsel moved for a mistrial, which the trial court denied, and the trial court admonished the jury "to disregard the last statement of the officer. That has no bearing on this case. It's not to be considered as evidence in this case." Grundy asserts on appeal that the trial court erred in denying his motion for mistrial and argues that the trial court's admonition did not adequately protect him from prejudicial inferences which the jury could draw from Officer Waters's statement.

■■ We hold that the trial court acted within its discretion in choosing to remedy this improper testimony by admonishing the jury to disregard the testimony rather than declaring a mistrial.[11] We have recognized that "[i]n order for a mistrial, there must appear in the record 'a manifest necessity for such action or an urgent or real necessity,'"[12] and trial courts are "in the best position to determine whether any remedial action [is] necessary to ... ensure a fair trial."[13] While an admonition will not suffice in all cases where

---

**8.** *See, e.g., Jackson v. Commonwealth,* Ky. App., 717 S.W.2d 511 (1986).

**9.** Ky., 973 S.W.2d 13, 38–39 (1988).

**10.** *Id.*

**11.** *Jones v. Commonwealth,* Ky.App., 662 S.W.2d 483 (1983).

**12.** *Miller v. Commonwealth,* Ky., 925 S.W.2d 449 (1996) (quoting *Skaggs v. Commonwealth,* Ky., 694 S.W.2d 672, 678 (1985)).

**13.** *Wilson v. Commonwealth,* Ky., 836 S.W.2d 872, 890 (1992).

inadmissible evidence is presented to the jury,[14] we believe the trial court in this case chose an appropriate remedy given the limited and nonspecific reference to another investigation.

## ABSENCE OF MEMBERS OF THE JURY PANEL

 During jury selection, Grundy's counsel asked to approach the bench and then moved the court to postpone further trial proceedings because "there were some jurors missing from the list, that did not show up today." The trial court denied the motion and allowed the trial to proceed. Grundy argues on appeal that the trial court failed to abide by the procedures outlined at KRS 29A.100 and KRS 29A.150:

KRS 29A.100. Postponement of service or excusing of juror.

(1) Upon the request of a prospective juror prior to his assignment to a trial court, the Chief Circuit Judge, or after his assignment to a trial court, the trial judge may excuse such juror upon a showing of undue hardship, extreme inconvenience or public necessity.

(2) In his discretion the judge may excuse a juror from service entirely or may postpone the juror's service temporarily. Whenever possible the judge shall favor temporary postponement of service over permanent excuse. *When excusing a juror, the judge shall record the juror's name, as provided in KRS 29A.080, and his reasons for granting the excuse.*[15]

KRS 29A.150 Contempt—Failure to perform jury service.

(1) A person summoned for jury service who fails to appear as directed shall be ordered by the court to appear forthwith and show cause for his failure to comply with the summons. If he fails to show good cause for noncompliance with the summons, he may be punished for contempt.

(2) *A juror who* fails to give attention at court, or who leaves the courthouse while the court is in session, or who *otherwise fails to complete jury service, without leave of court, may be punished for contempt.*[16]

Grundy contends that KRS Chapter 29A represents an effort by the General Assembly "to bring about reforms in the methods of jury selection in order to insure a fair and impartial jury and to meet the requirements of due process,"[17] and Grundy argues that the trial court either: (1) excused jurors outside of the appellant's presence without noting the reasons for the excuse; or (2) failed to issue summons to "no show" jurors asking them to give cause why they should not be held in contempt.

 After a careful review of the record and the authorities cited by Grundy, we conclude that Grundy's argument fails to state a coherent claim of error. Further, the whole argument rests on two assumptions for which we can find no support in the record: (1) the trial court excused jurors pursuant to KRS 29A.100; and (2) the trial court made no efforts to initiate contempt proceedings against "no show" jurors. Quite simply, the record is completely silent with regard to these questions, and, in fact, we have no proof before us that the trial judge excused a single member of the jury panel. As each of the authorities cited by Grundy in support of his argument involved conceded deviations from the statutory provisions of

14. *See, e.g., Carpenter v. Commonwealth,* Ky., 256 S.W.2d 509, 512 (1953).

15. KRS 29A.100 (emphasis added). KRS 29A.080 requires that a judge who disqualifies a juror "shall enter this determination in the space provided on the juror qualification form and on the list of names drawn from the jury wheel."

16. KRS 29A.150 (emphasis added).

17. *Ice v. Commonwealth,* Ky., 667 S.W.2d 671, 683 (1984).

KRS Chapter 29A,[18] we do not believe Grundy's naked innuendo states a cognizable claim. Our predecessor Court held, in *Brodgen v. Commonwealth,*[19] that a motion, pursuant to RCr 9.34, "raising an irregularity in the selection or summons of the jurors"[20] must have a factual basis:

> Kentucky law requires that a motion raising an irregularity in the selection of a jury precede the examination of the jurors. RCr 9.34. Appellants' objections [that the panel was drawn from property owners rather than exclusively from voting lists] were timely, but no effort was made to request a hearing or to present supporting facts until after the notice of appeal was filed. In *Williams v. Commonwealth,* 254 Ky. 277, 71 S.W.2d 626, 629 (1934), we said:

>> ". . . this court may reverse for . . . or any other error of the trial court, in the impaneling a jury or failing or refusing to provide a statutory jury, if demanded by the accused, and timely objections are made, *supported by appropriate evidence, and proper exceptions are noted of record* . . . ."

> *A mere objection, without some factual showing of irregularity in the selection of a jury panel, is not sufficient to challenge the procedure employed in selection of the jurors.* The trial court did not err in overruling appellants' objection.[21]

Grundy's motion merely asked the trial court to suspend the proceedings because some of the members of the jury panel did not appear on the morning the court called the case for trial. Grundy's counsel never mentioned KRS Chapter 29A during the bench conference in which she made her motion and made no issue regarding undocumented excuses before the trial court. Accordingly, we find that the trial court properly denied this motion.

■ This Court simply does not review alleged procedural errors when the appellant did not present the issue before the trial court,[22] and we will not allow appellants, under the guise of "developing" an argument raised in the trial court, "to feed one can of worms to the trial judge and another to the appellate court."[23] The trial court did not deviate from the statutory guidelines in denying Grundy's motion, and we find no error.

**18.** *Commonwealth v. Nelson,* Ky., 841 S.W.2d 628 (1992) (Chief Judge of Jefferson Circuit Court delegated to jury pool administrators the authority to determine which jurors should be excused, postponed, or disqualified from jury service); *Sanborn v. Commonwealth,* Ky., 754 S.W.2d 534, 548 (1988) ("The trial court erred in the jury selection procedures, in that the judge excused a number of prospective jurors without recording a reason for the excuses on the jury qualification form." *Id.*); *Ward v. Commonwealth,* Ky., 695 S.W.2d 404, 406–7 (1985) ("It is undisputed that the trial judge had not complied with the statute [KRS 29A.100] prior to the motion to be furnished with the list[.]" *Id.*).

**19.** Ky., 476 S.W.2d 192, 193 (1972)

**20.** RCr 9.34.

**21.** *Brodgen v. Commonwealth, supra* note 19 at 193 (emphasis added). The appellants in *Brodgen* appealed from the trial court's ruling regarding a specific objection to the manner in which the jury had been empaneled: "Under Rule 9.34, I believe that the jury in this case has been partly empaneled from property owners instead of completely from the voting lists . . . and I would like to object to it." Further, the *Brodgen* appellants attempted to further document their objection on appeal with "extensive material or jury selection and detailed legal arguments in support of their position" in connection with their appeals. In contrast, Grundy merely noted the absence of members of the jury panel, but did not even propose a theory to the trial court for the absenteeism, and certainly provided no evidence, either to the trial court, or upon appeal, to support a claim that the absences stemmed from deviations from KRS Chapter 29A procedures.

**22.** *See, e.g., McDonald v. Commonwealth,* Ky., 554 S.W.2d 84 (1977).

**23.** *Kennedy v. Commonwealth,* Ky., 544 S.W.2d 219 (1977).

## FIRST DEGREE BURGLARY AND SECOND DEGREE ASSAULT

 Grundy argues that the trial court erred in entering judgment upon the jury's verdict finding him guilty of both first degree burglary and second degree assault because his convictions for both offenses violate his state and federal protections against double jeopardy. Grundy concedes that he did not preserve this error for our review, and he asks us to review it pursuant to RCr 10.26. We find no error in the trial court's judgment finding Grundy guilty of both offenses, and, therefore, we find no "manifest injustice" to support Grundy's request for relief as to this unpreserved error.

In *Commonwealth v. Burge*,[24] this Court announced that "double jeopardy issues arising out of multiple prosecutions henceforth will be analyzed in accordance with the principles set forth in *Blockburger* . . . and KRS 505.020."[25] In *Blockburger v. United States*,[26] the United States Supreme Court indicated that the double jeopardy clause of the United States Constitution protects against multiple punishments for the same offense, and the Court explained that, in order to determine whether two offenses were the same for double jeopardy purposes: "the test to be applied is . . . whether each provision requires proof of an additional fact which the other does not."[27] KRS 505.020 codifies the so-called *Blockburger* test:

(1) When a single course of conduct of a defendant may establish the commission of more than one (1) offense, he may be prosecuted for each such offense. He may not, however, be convicted of more than one (1) offense when:

(a) One offense is included in the other, and defined in subsection (2) . . .

. . .

(2) A defendant may be convicted of an offense that is included in any offense with which he is formally charged. An offense is so included when:

(a) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or

(b) It consists of an attempt to commit the offense charged or to commit an offense otherwise included therein; or

(c) It differs from the offense charged only in the respect that a lesser kind of culpability suffices to establish its commission; or

(d) It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property or public interest suffices to establish its commission.[28]

We have twice addressed the question whether a double jeopardy bar prevents convictions for both first degree burglary and assault crimes. In *Polk v. Commonwealth*,[29] we found the trial court had properly entered judgment on the appellants' convictions for both first degree burglary and first degree assault because the two offenses met the *Blockburger* test:

The elements, or facts, which constitute [first degree assault] are intentionally causing (1) by means of a deadly weapon or dangerous instrument, the (2) serious, (3) physical injury of another.

. . .

The elements of burglary in the first degree are (1) the burglary of a dwelling and (2) armed with explosives or a deadly weapon; or (3) causing physical injury to a nonparticipant; or (4) uses or

---

24. Ky., 947 S.W.2d 805, 811 (1997).

25. *Id.*

26. 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

27. *Id.* at 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306.

28. KRS 505.020.

29. Ky., 679 S.W.2d 231, 233–234 (1984).

threatens use of a dangerous instrument.

In the present case evidence was introduced which met the separate requirements for the crimes of burglary and assault. The appellants unlawfully entered the house of George Cannon and then armed themselves with deadly weapons and threatened him with dangerous instruments, kitchen knives, as well as causing physical injury. These facts satisfied the statutory elements of burglary in the first degree. Evidence also proved that the physical injury caused by the appellants by the use of the dangerous instruments was both intentional and serious. These additional facts satisfied the elements of first degree assault.

Since a conviction for each offense required proof of a number of separate facts not required in order to prove the other, the conviction of the appellants for both offenses does not violate either 505.020 or the double jeopardy clauses of the Kentucky or the United States Constitutions.[30]

In *Butts v. Commonwealth*,[31] however, we found that double jeopardy principles prevented the appellant from convictions for both first degree burglary premised on physical injury and fourth degree assault:

In Count I the indictment charged appellant with burglary in the first degree and in satisfaction of a necessary element alleged that appellant or another participant in the crime "caused physical injury to Tina Hannibal." KRS 511.020(1)(b). In Count III the indictment charged appellant with assault in the fourth degree and in satisfaction of a necessary element alleged that appellant "intentionally or wantonly caused physical injury to Tina Hannibal." KRS 508.030.... In the course of committing burglary, appellant committed an assault

which resulted in physical injury to Tina Hannibal. However, the assault against Tina Hannibal was used as a necessary element to achieve a first degree burglary conviction.... [A]ppellant's conviction for fourth degree assault must be vacated.[32]

This case gives us our first opportunity to apply the *Blockburger* analysis to convictions for both first degree burglary and second degree assault.

KRS 511.020 defines burglary in the first degree:

(1) A person is guilty of burglary in the first degree when, with the intent to commit a crime, he knowingly enters or remains unlawfully in a building, and when in effecting entry or while in the building or in the immediate flight therefrom, he or another participant in the crime:

(a) Is armed with explosives or a deadly weapon; or

(b) Causes physical injury to any person who is not a participant in the crime; or

(c) Uses or threatens the use of a dangerous instrument against any person who is not a participant in the crime.[33]

The trial court's first degree burglary jury instruction included only the KRS 511.020(1)(b) "physical injury" aggravator:

You will find the Defendant guilty of First–Degree Burglary under this instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

A. That in this county on or about September 30, 1997, and before the finding of the Indictment herein, he and/or Marcus Sanders entered or remained unlawfully in a building occupied by Glen Fitch and Johnny Marlow without their permission, or aided, abetted or counseled with one or another [sic] in the commission of said act;

**30.** *Id.* at 234.

**31.** Ky., 953 S.W.2d 943, 944–945 (1997).

**32.** *Id.*

**33.** KRS 511.020.

B. That in doing so, he knew he did not have such permission;

C. That he did so with the intention of committing a crime therein;

*AND*

D. *That while in the building he caused physical injury to Johnny Marlow who was not a participant in the crime.*

KRS 508.020 defines assault in the second degree:

(1) A person is guilty of assault in the second degree when:

(a) He intentionally causes serious physical injury to another person; or

(b) He intentionally causes physical injury to another person by means of a deadly weapon or a dangerous instrument; or

(c) He wantonly causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument.[34]

The trial court instructed the jury it could find the defendant guilty of second degree assault under the "intentional physical injury with a dangerous instrument" theory contained in KRS 508.020(1)(b):

You will find the Defendant guilty of Second Degree Assault under this instruction if, and only if, you believe from the evidence beyond a reasonable doubt that in this county on or about September 30, 1997 and before the finding of the indictment herein, *he intentionally caused physical injury to Johnny Marlow by striking him with a dangerous instrument.*

First degree burglary unquestionably "requires proof of an additional fact which the other [second degree assault] does not:"[35] a knowing unlawful entry into a dwelling with the intent to commit a crime. Our determination of whether KRS 505.020 and constitutional double jeopardy principles bar conviction for both first degree burglary and second degree assault hinges on whether the jury instructions in this case required proof of a fact or facts for the second degree assault charge which the instructions did not require with respect to the first degree burglary charge. As both instructions contained the element of physical injury, the question then is whether the crime of second degree assault requires proof of an additional element or elements.

The first degree burglary instruction required the jury to find that Grundy "caused physical injury to Johnny Marlow who was not a participant in the crime." The second degree assault instruction required the jury to find that Grundy "intentionally caused physical injury to Johnny Marlow by striking him with a dangerous instrument." Second degree assault, therefore, requires the proof of two additional elements: (1) a culpable mental state (the defendant *intentionally* caused physical injury),[36] and (2) the defendant caused the physical injury *with a dangerous instrument.* Accordingly, first degree burglary and second degree assault satisfy the *Blockburger* "additional element" test and double jeopardy principles do not bar Grundy's conviction for both offenses.

For the reasons discussed above, we affirm the judgment of the Marion Circuit Court.

All concur.

---

**34.** KRS 508.020.

**35.** *Blockburger v. United States, supra* note 26 at 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306.

**36.** KRS 511.020(1)(b) requires no culpable mental state to prove the "physical injury" aggravator, and a defendant may be found guilty of burglary first degree upon the physical injury of any nonparticipant if the injury is casually connected, pursuant to KRS 501.060, to his conduct.