RENDERED: APRIL 9, 2021; 10:00 A.M.
TO BE PUBLISHED

**OPINION OF MARCH 12, 2021, WITHDRAWN**

# Commonwealth of Kentucky

# Court of Appeals

NO. 2018-CA-1643-MR


ANGELIKA KASEY; MICHELE NEWTZ;
CHRISTINA TOBIN; JULIA SHARP;
AND TLC RESCUE – TERESA'S
LEGACY CONTINUES, INC.                                    APPELLANTS


                        APPEAL FROM FRANKLIN CIRCUIT COURT
v.                      HONORABLE PHILLIP J. SHEPHERD, JUDGE
                        ACTION NO. 18-CI-00006


ANDREW BESHEAR
AND RYAN QUARLES                                          APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, DIXON, AND L. THOMPSON, JUDGES.

CALDWELL, JUDGE:  Angelika Kasey, Michele Newtz,[1] Christina Tobin, Julia Sharp, and TLC Rescue – Teresa's Legacy Continues, Inc. (collectively "Appellants"), appeal the opinion and order of the Franklin Circuit Court dismissing their complaint against Governor Andrew Beshear[2] and Commissioner of Agriculture, Ryan Quarles (collectively "Appellees").  After careful review, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The focus of this lawsuit is on KRS[3] Chapter 258, Animal Control and Protection.  Relevant to this case are KRS 258.095 (definitions for KRS 258.095 to 258.500), KRS 258.117 (creates the Animal Control Advisory Board), KRS 258.119 (creates the animal control and care fund and sets forth the requirements for counties to qualify for funds), and KRS 258.195 (pertains to the employment or appointment of animal control officers and the establishment and maintenance of

---

[1]  There appears to be some discrepancy as to whether Michele Newtz is suing as an individual or on behalf of the corporation Fiona's Legacy.  The complaint lists Michele Newtz on behalf of Fiona's Legacy while the notice of appeal simply lists Michele Newtz.  The distinction has no bearing on the outcome of this case; however, because the notice of appeal refers to Michele Newtz individually, we will also do so.

[2]  Suit was originally filed against former Governor Matthew Bevin.  In February 2020, we entered an order granting Governor Beshear's motion to be substituted as a party in Governor Bevin's stead.  The record was amended to reflect the substitution.

[3]  Kentucky Revised Statutes.

animal shelters). To distinguish these from the remaining statutes in the chapter, we will refer to them collectively as the "animal shelter statutes."[4]

In January 2018, the Appellants, as citizens and taxpayers of Kentucky, filed suit against the Appellees for their alleged failure to monitor or enforce compliance with the animal shelter statutes. More specifically, the Appellants alleged

> [s]ince the enactment of the [animal shelter statutes], the [Appellees] have failed and refused to monitor or enforce the laws leaving them largely useless and of no import. The evidence will show only 12% of Kentucky's 120 counties are in compliance with the [animal shelter statutes] while over 50% are in violation of three (3) or more parts of the [animal shelter statutes]. Major problems existent [sic] include but are not limited to pet overpopulation leading to crowded shelters, insufficient work force at shelters, and lack of education of shelter personnel. Additionally, a number of shelters are inadequate as a result of aging and poorly maintained facilities built with inappropriate materials that cannot be properly cleaned and disinfected; poor ventilation; lack of appropriate veterinary care; and lack of appropriate quarantine areas.

(Record (R.) at 4.)

The Appellees filed a motion to dismiss per CR[5] 12.02(a) and (f) in lieu of an answer. They made a number of arguments as to why their motion was

---

[4] With some exceptions, the remainder of the statutes in KRS Chapter 258 pertain to rabies, vaccinations, and euthanasia.

[5] Kentucky Rules of Civil Procedure.

appropriate; however, most relevant for purposes of this appeal was the argument that the Appellants lacked standing. In February 2018, the circuit court conducted a hearing on the Appellees' motion. At the time, the court voiced concern about its ability to grant the Appellants' requested relief. Regardless, the court set a briefing schedule giving the Appellants the opportunity to respond.

In their response, the Appellants claimed to have standing because they suffered actual damage. Also, they claimed to have "a real and substantial interest in the outcome" of the case because they used "substantial post-tax funds to provide services the state and counties should otherwise be funding," thereby unjustly enriching the Commonwealth. (R. at 47.) Attached to the Appellants' response was a study whose purported goal was "to assess current conditions in Kentucky's county shelters and determine the degree of compliance with Kentucky shelter laws." (R. at 50.) It concluded that a majority of Kentucky's animal shelters were not compliant with existing laws and two major factors contributing to this are a lack of funding and unsatisfactory laws. (R. at 71-72.) Notably, the Appellants did not assert in their response that the animal control and care funds are being mishandled or misappropriated.

After the Appellees filed a reply, the Appellants filed a notice of submission, and neither party requested additional briefing or oral argument. In October 2018, the circuit court issued its opinion and order wherein it dismissed

the Appellants' complaint because they lacked standing and had presented a nonjusticiable political question. This appeal followed.

## ANALYSIS

The threshold issue before us is whether the Appellants have constitutional standing to pursue this suit in circuit court. Matters of constitutional standing are reviewed *de novo*. *Overstreet v. Mayberry*, 603 S.W.3d 244, 251-52 (Ky. 2020).

In 2018, the Kentucky Supreme Court formally adopted the *Lujan*[6] test "as the constitutional standing doctrine in Kentucky[.]" *Commonwealth Cabinet for Health and Family Services, Department of Medicaid Services v. Sexton by and through Appalachian Regional Healthcare, Inc.*, 566 S.W.3d 185, 196 (Ky. 2018). The Court stated

> at bottom, for a party to sue in Kentucky, the initiating party must have the requisite constitutional standing to do so, defined by three requirements: (1) injury, (2) causation, and (3) redressability. In other words, [a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.

---

[6] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992).

-5-

*Id.* (quotation marks and footnotes omitted). Although we affirm the opinion and order of the circuit court, because it did not apply this test to the case *sub judice*, we must do so now.

First, the Appellants must demonstrate they have suffered a personal injury. An injury has been defined as "[t]he violation of another's legal right, for which the law provides a remedy; a wrong or injustice." *Injury*, BLACK'S LAW DICTIONARY (11th ed. 2019).

> To establish the first requirement, an injury must be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling. For an injury to be particularized, it must affect the plaintiff in a personal and individual way. This means the plaintiff personally has suffered some actual or threatened injury. For an injury to be concrete, it must actually exist.

*Overstreet*, 603 S.W.3d at 252 (internal quotation marks and footnotes omitted).

As citizens and taxpayers in Kentucky, the Appellants assert they have a right to the enforcement of Kentucky laws. This right, they suggest, has been violated by the Appellees' failure to enforce the animal shelter laws. Additionally, they argue they have "far more 'skin in the game' than the average citizen" because "they contributed substantial funds and time to provide services the state and counties should otherwise be funding."

To begin, we cannot say that the failure to enforce Kentucky laws is the type of concrete and particularized injury contemplated by the Court when it

adopted the *Lujan* test. The only reason this case becomes particularized to the Appellants is because they voluntarily decided to expend their personal time and resources to care for stray and abandoned animals, although they were under no legal obligation to do so. The Appellants have not provided us with any Kentucky case law allowing a party to assert standing due to a voluntary injury.[7] We decline to expand the doctrine of standing to include such a theory.

The Appellants also asserted standing as taxpayers. In *Overstreet v. Mayberry*, where the Court dealt exclusively with the injury element of standing, the Court explained that taxpayers in Kentucky have been permitted to sue the government or its agents "on behalf of themselves . . . to challenge the propriety of city, county, or state tax or expenditure of public funds[,]" or "on behalf of the Commonwealth as a matter of equity[.]" *Overstreet*, 603 S.W.3d at 263-65. Given

---

[7] The Appellants cited to *Humane Society of the United States v. The United States Postal Service*, 609 F. Supp. 2d 85 (D. D.C. 2009), as support for their position. In that case, the Humane Society challenged the United States Postal Service's (USPS) distribution of a magazine that promoted chicken fighting. The USPS argued the Humane Society lacked standing because it was a voluntary organization and its injury was voluntarily inflicted. In an effort to show it had standing, the Humane Society attached an affidavit and articles indicating that the circulation of the publication increased its expenditure of funds for emergency services. The Court concluded "[the Humane Society's] decision to dedicate time and resources to [reducing illegal animal fighting] may be a voluntary budgetary decision, but if the need to care for animals on an emergency basis is increased by USPS's circulation of [the publication], then the financial injury to the Humane Society is neither voluntary nor self-inflicted." *Id*. at 91. While we may have been persuaded by this theory of standing, at least for the Appellant, TLC Rescue, the Appellants did not attempt to put forth any evidence indicating TLC's decision to budget additional monies was the result of the Appellees' actions.

the Appellants' pleadings, specifically the allegations above, it appears they attempted to gain standing under the first theory.

The Court alluded that the cases where taxpayers had successfully obtained standing on behalf of themselves were those where

> taxpayers [sought] to enjoin the imposition of an illegal tax or expenditure of public funds or to compel compliance with certain statutory or constitutional requirements attached thereto.

*Id*. at 263-64. However, the Appellants did not allege in the circuit court that the funds made available through the animal shelter laws were being illegally expended. In a footnote in their reply brief for this Court, the Appellants stated "[o]f significant note and concern are distributions made in obvious contravention of KRS 258.119[.]" Also, attached to their reply was a series of spreadsheets purporting to reflect the dispersal of grant funds. We are not permitted to review an argument for the first time on appeal. We have said repeatedly

> we will not allow appellants, under the guise of 'developing' an argument raised in the trial court, to feed one can of worms to the trial judge and another to the appellate court.

*Grundy v. Commonwealth*, 25 S.W.3d 76, 84 (Ky. 2000) (internal quotation marks and footnote omitted). Thus, the Appellants failed to show they suffered the type of injury required to demonstrate standing.

Considering the Appellants need to successfully meet all elements of the *Lujan* test to have constitutional standing, we need not proceed with our analysis. However, because further analysis may prove insightful, we will continue.

If the Appellants had pled a particularized injury, the Appellants would have needed to show the Appellees were the cause of their injury. In other words, the injury must be "fairly traceable to the defendant's allegedly unlawful conduct." *Sexton*, 566 S.W.3d at 196. Here, the Appellants argued that their injury was a result of the Appellees' failure to monitor and enforce compliance with the animal shelter laws.

This is problematic for two reasons. Again, we note that the Appellants' chose to spend their time and resources rescuing animals; they had no legal obligation to do so. If the Appellants had not chosen to pursue this cause, no matter how noble, there would be no injury particular to the Appellants.

Additionally, the animal shelter statutes do not vest enforcement power with the Governor or the Commissioner of Agriculture. KRS 258.117 creates the Animal Control Advisory Board (ACAB) and attaches it to the Department of Agriculture for administrative purposes. The purpose of the ACAB is to

> evaluat[e] applications for and [review] disbursements
> from the animal control and care fund, create[e] training

> programs, and other duties relating to animal control and care in the counties of the Commonwealth.

KRS 258.117(1). The ACAB is further instructed to "promulgate administrative regulations to carry out the provisions of this section." *Id*.

KRS 258.119 creates the animal control and care fund (the "Fund") and sets forth the terms for how the Fund is to be funded, spent, and distributed to the counties. Further, it states that if the counties have received funds and failed to follow the terms of the statute, then the money must be refunded to the Department of Agriculture. KRS 258.119(5). Again, oversight of the distribution of the Fund was given to the ACAB; however, the responsibility to establish and enforce these programs was granted to "[t]he governing body of each county" and animal control officers. KRS 258.195(1).

The only action required of the Governor is to appoint the members of the ACAB, and we can find no statutory obligation imposed upon the Commissioner of Agriculture. KRS 258.117(2). Thus, even if we were to acknowledge that the Appellants' injuries were not self-inflicted, we cannot say the cause of those injuries was the Governor or the Commissioner of Agriculture's failure to enforce the animal shelter statutes.

Had the Appellants established the first two elements of the *Lujan* test, they would have lastly needed to show their injury was "likely to be redressed

-10-

by the requested relief." *Sexton*, 566 S.W.3d at 196. The Appellants requested the

following relief:

> [D]eclaratory judgment that the Defendants['] of lack
> financing for, oversight of, and enforcement of the
> statutory requirements of Kentucky's county animal
> shelters is in conflict with the Kentucky Constitution and
> KRS 258 *et seq.*
>
> . . . .
>
> That the Court declare the respective rights and duties of
> the parties and enter judgment declaring the Plaintiffs
> have been and are being denied rights as citizens of this
> Commonwealth to the enforcement of laws of this
> jurisdiction.
>
> That mandamus issue to the Governor of the
> Commonwealth of Kentucky requiring him to
> recommend to the General Assembly of Kentucky, either
> at its next regular session or at a special session, that the
> General Assembly enact legislation pertaining to the
> animal shelters required by the [animal shelter statutes]
> to obtain necessary compliance therewith and
> enforcement including but not limited to adequate
> training, monitoring, and enforcement mechanisms.
>
> That mandamus issue to the Governor of the
> Commonwealth of Kentucky and the Commissioner of
> Agriculture to take all necessary and appropriate action
> to assure the laws set forth in KRS 258 *et seq.* are
> faithfully executed.

(R. at 3-5.) The circuit court correctly held that it could not grant this requested

relief because it blatantly violates the separation of powers doctrine. As the circuit

court so aptly stated

-11-

> while these goals may be worthy and laudable, they present public policy questions that are within the province of the legislature, not the judiciary. The solution to the problem presented in the [c]omplaint is to enact better legislation, not to impose reform of the status quo concerning animal shelters by judicial fiat.

(R. at 123.)

As a final point, we note that, at its core, this case concerns animal rights. The statutes at issue in this case, and others within the chapter, set forth standard guidelines for the humane care of stray and abandoned animals. The Appellants asserted that this standard, while inadequate, has not been met in the majority of Kentucky counties. Unfortunately, standing requirements have made it difficult for animal rights activists to enforce animal protections. Varu Chilakamarri, *Taxpayer Standing: A Step Toward Animal-Centric Litigation*, 10 ANIMAL L. 251, 252 (2004). While some of our sister states have addressed the issue of standing in animal rights cases differently, Kentucky does not appear to have considered it. In the case *sub judice*, the Appellants have attempted to show standing via their status as citizens and taxpayers of Kentucky. Perhaps, given the right facts and circumstances, one could obtain such standing. However, for the reasons set forth above, we cannot say the Appellants have properly pled it here.

## CONCLUSION

For the foregoing reasons, we affirm the October 26, 2018 opinion and order of the Franklin Circuit Court.

ALL CONCUR.

| BRIEFS FOR APPELLANTS: | BRIEF FOR APPELLEES: |
|---|---|
| Nolia G. Batey | M. Stephen Pitt |
| Katie Brophy | S. Chad Meredith |
| Julia W. Springsteen | Matthew F. Kuhn |
| Louisville, Kentucky | Joseph A. Bilby |
| | Frankfort, Kentucky |