COMMONWEALTH of Kentucky,
Appellant,

v.

Jerry Michael CONLEY, Appellee.

No. 96–SC–954–DG.

Supreme Court of Kentucky.

Oct. 30, 1997.

Rehearing Denied Feb. 19, 1998.

A.B. Chandler, III, Attorney General, Joseph R. Johnson, Samuel J. Floyd, Jr., Assistant Attorneys General, Frankfort, for Appellant.

Michael C. Lemke, Louisville, for Appellee.

WINTERSHEIMER, Justice.

This appeal is from a decision of the Court of Appeals which reversed and remanded a conviction for first-degree burglary because the circuit judge had ordered the defendant to wear leg shackles during the trial. Conley had been convicted of first-degree burglary and sentenced to 15 years in prison.

The issue is whether the circuit judge abused his discretion in ordering Conley to be shackled throughout the trial. The question presented by the Commonwealth is whether repeated and forceful admonitions to the jury to disregard the shackles, together with the overwhelming evidence of guilt, negates any possible prejudice to the defendant.

Conley frames the issue as whether the trial judge denied him due process and a fair trial by requiring him to be tried in shackles. Conley argues that his constitutional right to a fair trial was denied because the trial judge forced him to stand trial in leg irons and thus the Court of Appeals properly reversed his conviction. A majority of the Court of Appeals, in a split 2 to 1 decision, reversed on the basis of the effect on the presumption of innocence and stated that the case should be retried even if there was overwhelming evidence of guilt. They relied on the U.S. Supreme Court authority in *Holbrook v. Flynn*, 475 U.S. 560, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986) and *Scrivener v. Commonwealth*, Ky., 539 S.W.2d 291 (1976). The dissenting opinion believed that the trial judge did not abuse his discretion and the conviction should be upheld. This Court accepted discretionary review.

The use of shackles was found not to be reversible error in *Tunget v. Commonwealth*, 303 Ky. 834, 198 S.W.2d 785 (1947). This Court stated that the use of shackles would be appropriate in exceptional cases but stated that it would condemn such practice as a general rule. It has been held subsequently that a defendant should not be restrained by handcuffs or shackles in the absence of necessity of such restraint. *Williams v. Commonwealth*, Ky., 474 S.W.2d 381 (1971).

Conley was originally charged with first-degree burglary involving the theft of a firearm. During his arraignment before the ultimate trial judge on that charge, he fled the courtroom and escaped from the courthouse. Prior to trial, the trial judge ordered that Conley be kept in shackles during the course of the trial. The trial judge gave the jury several admonitions to the effect that Conley was to be presumed innocent and that jurors were not to take into consideration the fact that Conley was under restraint. The jury returned a conviction and fixed his sentence at 15 years.

The trial judge determined that Conley's escape at his arraignment presented a security risk that required drastic action. Relying on *Tunget, supra*, the judge stated that he was exercising his discretion in this regard based on Conley's prior actions. The judge said that he had considered bringing in several state troopers for the trial but decided over defense objection, that leg irons would prejudice Conley less than having him surrounded by several police officers.

During voir dire examination of the prospective jurors, the judge specifically addressed members of the panel in this regard and initially no prospective juror expressed any concern about the leg irons which would adversely affect his or her ability to provide a presumption of innocence to the defendant. The judge excused a prospective juror for cause and another was called. The new juror stated that the leg irons would raise a question in his mind about innocence and the juror was excused. Again, later in the voir dire examination when defense counsel was asking about the restraints, two or three other prospective jurors expressed concern about their ability to presume innocence. Following further questioning and admonitions by the trial judge, these jurors indicated that they could follow the directions of the court as to the presumption of innocence. During further voir dire another prospective juror was excused when he stated that his judgment might be affected by the leg irons. The record does not indicate which prospective jurors, if any, were peremptorily removed because they expressed concerns

about the restraints. Conley was not handcuffed at trial.

This Court has long held that the practice of shackling a defendant during trial is to be condemned. *Tunget.* However, this Court has also recognized that the use of shackles to restrain certain defendants has been necessary in cases where the trial court appears to have encountered some good grounds for believing such defendants might attempt to do violence or to escape during their trials. *Tunget.* Ultimately, this is a matter that rests in the "sound and reasonable discretion" of the trial judge. *Tunget.*

Here, the trial judge had good reason to believe that Conley was a man of sufficiently "demonstrated desperation" that he might make a similar attempt during trial as a result of his fleeing the courtroom and courthouse during arraignment. *See Tunget.* A careful review of the entire record indicates that the trial judge, exercising his sound discretion, thoroughly considered the matter, and citing the authority of *Tunget,* determined that for security reasons, Conley would be shackled throughout the trial.

We should review the cases cited by the Court of Appeals and Conley in this matter. The Court of Appeals relied on *Estelle v. Williams,* 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976), which was a case in which the defendant was required to wear jail clothing at the trial. *Estelle* was factually different from this case and involved none of the security risks presented here. *Estelle* does emphasize the importance of protecting the presumption of innocence and the record in this case demonstrates that the trial judge repeatedly admonished and questioned the jury regarding the presumption of innocence related to the leg irons. There were numerous comments made during voir dire of prospective jurors who were all thoroughly examined and questioned and if necessary excused from the final panel.

The Court of Appeals also relied on *Taylor v. Kentucky,* 436 U.S. 478, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978), which involved the denial of an instruction regarding the presumption of innocence. *Taylor, supra,* is also distinguishable because it does not relate to the use of restraints on a defendant. Similarly,

*Marion v. Commonwealth,* 269 Ky. 729, 108 S.W.2d 721 (1937), is inapplicable to the facts of this case because it involved the failure through oversight to remove shackles from the prisoner before he was seen by the jurors. There was no abuse of the discretion of the trial court involved in *Marion, supra,* and unlike this case, there were no security risks presented by demonstrated prior acts on the part of the defendant to escape.

*Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970), noted by the Court of Appeals, involved a defendant who was so disruptive at trial that he was entirely removed from the courtroom. *Allen* held that the trial judge did not abuse his discretion in deciding to exclude the defendant from the courtroom rather than to physically restrain him. Reliance on *Allen* is misplaced because it is factually distinguishable from the present case.

*Holbrook v. Flynn, supra,* which holds that shackles are more prejudicial than additional security officers at trial, is unpersuasive. *Holbrook* involved a complaint by the defendant about the use of courtroom security consisting of twelve uniformed officers. *Holbrook* stands for the proposition that the presence of security officers at trial is not inherently prejudicial under the facts of that case. However, *Holbrook* does not hold that the use of shackles at trial is never permissible. The use of uniformed officers is not the only permissible means of obtaining courtroom security and shackles can be used when necessary.

Reliance on *Scrivener v. Commonwealth, supra,* is also misplaced. In that case, this Court held that it was reversible error for a trial judge to refuse to grant a motion by the defendant for continuance so that he could be tried in street clothing rather than in identifiable prison clothing. The holding of *Scrivener* was entirely fact specific, and was a direct violation of the holding of *Estelle.* This case involves a valid exercise by the trial judge of his broad discretion, a question not considered by *Scrivener.*

This Court has long held as a general rule that the practice of shackling a defendant during trial is to be condemned. *Tunget.* However, we also recognize that the use of leg irons to restrain certain defendants is necessary where the trial judge has good reason for believing that the defendant might do violence or escape during trial. As noted in *Tunget,* ultimately this matter is one that rests in the sound discretion of the trial court. Each decision that involves the shackling of a defendant during trial must be given careful and thorough judicial scrutiny. Here, the record demonstrates that the trial judge carefully considered all the available alternatives with regard to security in the courtroom. The trial judge thoroughly examined and admonished prospective jurors regarding the presumption of innocence and its relationship to the restraints placed on Conley. There is nothing to indicate that the jury that was ultimately selected was unduly prejudiced and the use of discretion by the trial judge was within the bounds of legal propriety. There was no abuse of discretion. Consequently, there was no reversible error.

The decision of the Court of Appeals is reversed and the judgment of conviction is reinstated.

COOPER, GRAVES, JOHNSTONE and WINTERSHEIMER, JJ., concur.

LAMBERT, J., dissents by separate opinion in which STEPHENS, C.J., and STUMBO, J., join.

STUMBO, J., dissents by separate opinion in which STEPHENS, C.J., and LAMBERT, J., join.

LAMBERT, Justice, dissenting.

Requiring a defendant to stand trial wearing leg irons in full view of the jury eviscerates the presumption of innocence. Leg irons amount to an official declaration that the person so restrained is an immediate danger who must be subdued to prevent harm to the public. While courts are entitled to impose restraint upon persons in custody as may be necessary to assure their good behavior and prevent their flight, the means employed must be the least restrictive and the least prejudicial to the defendant's rights, and particularly his right to be presumed innocent.

The record does not reflect any trial court consideration of merely procuring additional

law enforcement officers to prevent flight. The record is also without any indication that appellant represented a security risk otherwise. Prior to employing the extreme means of shackles, it was incumbent upon the trial court to duly consider whether a less restrictive and prejudicial means would have been sufficient.

The practices of requiring a defendant to appear shackled or dressed in prison garb before the jury have been held to be "inherently prejudicial practices" which have been closely scrutinized by the U.S. Supreme Court. *Holbrook v. Flynn*, 475 U.S. 560, 568, 106 S.Ct. 1340, 1345, 89 L.Ed.2d 525 (1986). The use of extra guards to ensure safety and reduce the risk of flight at a proceeding has been held to be less prejudicial than shackling or forcing the defendant to wear prison garb: "[w]hile shackling and prison clothes are unmistakable indications of the need to separate a defendant from the community at large, the presence of guards at a defendant's trial need not be interpreted as a sign that he is particularly dangerous or culpable." *Id.*, at 569, 106 S.Ct. at 1346.

In *Illinois v. Allen*, 397 U.S. 337, 344, 90 S.Ct. 1057, 1061, 25 L.Ed.2d 353 (1970) the Court stated "even to contemplate such a technique, much less see it, arouses a feeling that no person should be tried while shackled except as a last resort." The Court then went on to comment on the effect of forcing defendants to wear shackles has on the dignity of the court system: "[n]ot only is it possible that the sight of shackles and gags might have a significant effect on the jury's feelings about the defendant, but the use of this technique is itself something of an affront to the very dignity and decorum of judicial proceedings that the judge is seeking to uphold." *Id.*

Kentucky courts have also held that requiring a defendant to be shackled is a practice which should only be used when absolutely necessary. For example, where the Court found a defendant to be a man of "demonstrated desperation" (he had been convicted of murder and given a life sentence, and while in jail he had obtained a gun and attempted to escape after murdering an associate warden), the use of shackles was

permissible: "this appears to have been an exceptional case ... [b]ut again we say that ordinarily this practice should not be followed and usually it would be condemned by this court." *Tunget v. Commonwealth*, 303 Ky. 834, 198 S.W.2d 785 (1947) cert. den. 331 U.S. 833, 67 S.Ct. 1514, 91 L.Ed. 1847. In *Williams v. Commonwealth*, Ky., 474 S.W.2d 381, 383 (1971) we stated that "the general rule [is] that a defendant should not be handcuffed or manacled during a criminal trial in the absence of a necessity for such restraint. The cases cited also point out that the trial court is vested with discretion in determining whether a defendant's substantial rights have been violated, even in cases of unwarranted shackling."

These authorities convince me that the trial court abused its discretion resulting in prejudicial error.

STEPHENS, C.J., and STUMBO, J., join this dissenting opinion.

STUMBO, Justice, dissenting.

With all due respect to the majority, this case does not present an abstract constitutional argument. A cursory review of the record makes it clear that the admonition relied upon by the majority to offset the prejudicial effect of the Appellee's shackling was ineffective at best. The comments of the jurors elicited during the *voir dire* demonstrate this:

- I think I would have to question the defendant being here in leg chains, because my mother always taught me where there's smoke there's got to be some fire.
- It kindly bothers me just a little.
- It does me too. If he's innocent, why's he got the leg irons on?
- I would try not to let it affect me, but I don't know
- I don't think (the leg irons should have a bearing) but if he's innocent why's he got the leg irons on?

   (When asked by defense counsel "So you've got a suspicion in your mind at this point that he must be guilty already: am I correct in saying that?")

• Or, somebody else thinks he is.

While it is true that the trial court is vested with considerable discretion in this area, historically we have permitted the shackling of defendants within the view of the jury only in the most "exceptional cases, in cases where the trial courts appeared to have encountered some good grounds for believing such defendants might attempt to do violence or to escape during their trials." *Tunget v. Commonwealth,* Ky., 198 S.W.2d 785, 786, 303 Ky. 834, 836 (1946). The defendant in the *Tunget* case had been serving a life sentence for murder when he somehow obtained a gun, locked four guards in his own cell, shot and killed the assistant warden, and shot at two other guards in his attempt to escape. *Id.* at 786. As the Court noted in reviewing those circumstances, "[c]onfinement had not curbed him, courtroom solemnity had not cowed him, armed guards had neither daunted nor discouraged him." The circumstances of the case at bar bear little resemblance to those of *Tunget.*

In the years since the *Tunget* case, the United States Supreme Court has written on this issue several times. In *Holbrook v. Flynn,* 475 U.S. 560, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986), the Court held that the use of shackles is far more prejudicial than placing additional security personnel in the courtroom because of "the wider range of inferences that a juror might reasonably draw from the officers' presence. . . ." *Id.* at 569, ̲106 S.Ct. at 1346. The inferences thought reasonable by the Court were to guard against disruptions from either outside or inside the courtroom, as well as the need to separate the defendant from the community at large. *Id.* "Our society has become inured to the presence of armed guards in most public places; they are doubtless taken for granted so long a their numbers or weaponry do not suggest particular official concern or alarm." *Id.*

The Court in *Holbrook* also noted that there can be a greater danger of prejudice if the jury is aware that the security arrangements for the trial are unusual or extraordinary. *Id.* at 571, 106 S.Ct. at 1347 (citations omitted). Here, the court's repeated admonitions, rather than curing potential prejudice, served instead to make the jury aware that Appellee's shackles were not the norm.

Similarly, in *Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970), the Court commented that "to contemplate such a technique [as shackling], much less see it, arouses feeling that no person should be tried while shackled and gagged except as a last resort. Not only is it possible that the sight of shackles and gags might have a significant effect on the jury's feelings about the defendant, but the use of this technique is itself something of an affront to the very dignity and decorum of judicial proceedings that the judge is seeking to uphold." *Id.* at 344, 90 S.Ct. at 1061.

In the instant case, Appellee had attempted an escape during the arraignment, some seven months prior to the trial. He had been held in custody pending trial and the order directing his shackling was ordered *sua sponte* by the court. The court's order indicated that it had considered additional security guards but felt that the restraints would be less prejudicial. There is no indication that the trial court attempted to extract a promise of good behavior from Appellee, nor is there any indication in this record that Appellee continued to behave in any way disruptively during the pretrial detention. No hearing was held prior to the entry of the court's order.

As the United States Supreme Court stated in *Holbrook v. Flynn,* "certain practices pose such a threat to the 'fairness of the factfinding process' that they must be subjected to 'close judicial scrutiny.' " *Holbrook,* 475 U.S. at 568, 106 S.Ct. at 1345 (citations omitted). Although *Holbrook* involved an unobjected-to requirement that the defendant wear jail clothing during trial, the Court nonetheless held that the circumstances required close scrutiny. Utilizing that standard, I can only conclude that, without more than what is contained in this record, this is not the exceptional case where the physical restraint of the Appellee was the least restrictive means of dealing with Appellee. The trial judge erred when he held that shackling is inherently less restrictive and prejudicial than additional security personnel in the court room. Furthermore, this case is

**82**

not one of overwhelming evidence of guilt as contended by the Commonwealth. There were no eyewitnesses to the crime and no physical evidence linking Appellee to the burglary. The conviction was based on the testimony of admitted drug users who collaborated on their stories before giving information to the police and who admitted tampering with evidence. I would affirm the decision of the Court of Appeals.

STEPHENS, C.J., and LAMBERT, J., join this dissenting opinion.