Charles PETERSON, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee,

No. 2002–SC–0973–MR.

Supreme Court of Kentucky.

April 21, 2005.

Shelly R. Fears, Department of Public Advocacy, Frankfort, Counsel for Appellant.

Gregory D. Stumbo, Attorney General, John R. Tarter, Assistant Attorney General, Criminal Appellate Division, Frankfort, Counsel for Appellee.

Opinion of the Court by Justice GRAVES.

On June 30, 2000, the Marshall County Sheriff's Department executed a search warrant of Appellant Charles Peterson's residence, wherein they discovered several compact discs containing a variety of pornographic images. One disc included multiple images of children engaged in explicit sexual activity, as well as a photograph of two minors, A.D. and T.S. The sheriff's department later obtained a videotape, surreptitiously recorded by Appellant, which briefly portrayed A.D. nude as she exited the shower.

Based on this evidence, as well as the testimony of both A.D. and the investigating detective, a jury of the Marshall Circuit Court convicted Appellant for the use of a minor in a sexual performance, possession of matter portraying a sexual performance by a minor, and being a persistent felony offender in the second degree. Following the jury's recommendation, the trial judge fixed Appellant's total sentence for these crimes at twenty years. Appellant now appeals to this Court as a matter of right.

Appellant raises three issues on appeal: (1) alleged improprieties in the excusal of absent jurors; (2) the inference of guilt created by the trial judge's decision to leave Appellant shackled during trial; and (3) whether the Commonwealth failed to prove the images introduced into evidence (other than the videotape of A.D.) depict real minors rather than computer-generated or so-called "virtual" child pornography.

## I. Juror Excusal

Prior to *voir dire*, counsel for Appellant moved for a continuance, or in the alternative a dismissal of the case, because twenty-one potential jurors failed to report for jury service. The trial judge denied the motion, stating that the fifty-three panelists present were sufficient to proceed with trial. Appellant now contends that he was denied a fair and impartial jury because of alleged improprieties in the excusal of missing jurors.

Appellant first suggests that the trial judge delegated his responsibility for excusing potential jurors to "someone else, possibly a clerk." In *Commonwealth v. Nelson*, 841 S.W.2d 628, 631 (Ky.1992), this Court held that such a delegation to court administrators constituted a substantial deviation from the juror selection and exemption procedures found in KRS Chapter 29A as well as in the Administrative Procedures of the Court of Justice, Part II.

Our perusal of the record, however, reveals nothing to support Appellant's claim that the trial judge, or one of his subordinates, actually excused the twenty-one individuals who failed to appear for jury service. At trial, the trial judge stated that he did not know why the jurors were not present, indicating that the missing venire members were likely "no shows" who had no prior approval to miss jury duty.

Likewise, Appellant's second assertion, that the trial court neglected to issue "show cause" orders to the missing jurors, also lacks substantiation. While KRS 29A.150(1) states that missing jurors "shall be ordered by the court to appear forthwith and show cause for his failure to comply with the summons," we find no evidence that the trial judge disregarded this statutory mandate.

These unsupported claims of error correspond almost exactly to those we considered, then rejected, in *Grundy v. Commonwealth*, 25 S.W.3d 76, 83 (Ky.2000). In *Grundy*, the defendant failed to offer any proof that the trial court (1) improperly excused jurors, or (2) made no effort to initiate contempt proceedings against missing jurors. *Id.* at 83–84. We found such "naked innuendo" insufficient to support a cognizable claim, particularly since "a motion, pursuant to RCr 9.34, 'raising an irregularity in the selection of the jurors' must have a factual basis." *Id.* at 84, *citing Brodgen v. Commonwealth*, 476 S.W.2d 192 (Ky.1972).

Lacking supporting facts, Appellant cannot show that he was prejudiced, nor can he demonstrate that the trial court erred in denying his motions for continuance or dismissal. Nothing in the record supports Appellant's claim that a clerk, rather than the trial judge, excused the absent jurors, or that the trial court failed to order these individuals to show cause for their absence. A mere complaint that some members of the venire did not appear for jury duty is insufficient to demonstrate the trial court erred in this matter.

## II. Shackles

■ Prior to trial, while being transported from the detention center to the courtroom, Appellant became agitated and resisted the bailiff's instructions. Following a hearing on this incident, the trial court determined that Appellant would remain in both handcuffs and leg irons throughout trial. Appellant complains that the use of these restraints undermined the presumption of innocence and created an inference of guilt in the minds of the jury.

During the hearing on this matter, the bailiff described Appellant's behavior as he was brought into the courtroom:

Bailiff: I told Mr. Peterson we were going to take the handcuffs off of him, and let him come out here and seat him [pointing to the defense table]. At that time he said "no" and he sort of threw a little fit and he said just take me back and try me in the absence of everybody.

Prosecutor: When you say he threw a little fit, would you describe for the court exactly what he did?

Bailiff He just jerked around and I grabbed him by the handcuffs and was holding him, he was jerking back two or three times.

Prosecutor: Do you feel—have you been trained in court security?

Bailiff: Yes.

Prosecutor: Do you feel that at this time that it is in the best interests that he remain shackled and chained?

Bailiff: Yes.

On cross-examination, the bailiff revealed that Appellant became upset when he learned of the bailiff's intention to remove only some of the restraints before trial:

Bailiff: His trouble started when I was going to remove the handcuffs but leave the leg shackles on.

Defense: O.K., so when he found out that the leg shackles were going to stay on, that's when he was upset?

Bailiff: Right.

. . . .

Defense: He just wants to be tried without the jury seeing those leg irons on?

Bailiff: That's what he said.

Appellant then took the stand to answer questions regarding this incident and his expected behavior during trial:

Defense: Mr. Peterson, who told you that you were going to have to wear shackles here?

Appellant: The deputy right behind me [gesturing to the bailiff].

Defense: And what was your reaction?

Appellant: I thought it was a gross affront to a fair trial that I would receive, you know, if a jury seen me with the shackles and handcuffs on. There was no way I could ever get a fair trial out of this.

. . . .

Defense: What do you expect your behavior will be sitting here in this courtroom during this trial?

Appellant: After this, I don't know. I—I'm ready to go back to the jail cell and let you all try me in absenteeism.

Defense: Well, assuming we don't try you in absenteeism, what is your, what do you anticipate your behavior will be sitting here in the courtroom?

Appellant: Really I don't know after this. You got me, this has got me so dang upset now I don't know. It's an affront to the justice system of this country to have this happen.

The prosecution reminded the trial court that Appellant was convicted in 1982 for rape, a violent offense. The trial court then ruled the shackles would remain on Appellant throughout the course of the one-day trial:

Court: We're going to leave it like it is, based on his own testimony. The Court finds that—I don't think this is going to harm him getting a fair trial, but I am very concerned about his reactions based on his own testimony.

The inference of guilt created by restraining a defendant during trial "relates closely to an accused's constitutional right to be presumed innocent until proven guilty." *Hill v. Commonwealth,* 125 S.W.3d 221, 233 (Ky.2004). Accordingly, this Court has consistently condemned the practice of shackling a defendant during trial, absent the presence of extraordinary circumstances. *Commonwealth v. Conley,* 959 S.W.2d 77 (Ky.1998); *Tunget v. Commonwealth,* 303 Ky. 834, 198 S.W.2d 785 (1946); *Marion v. Commonwealth,* 269 Ky. 729, 108 S.W.2d 721 (1937). *See also* RCr 8.28(5) (stating that "[e]xcept for good cause shown the judge shall not permit the defendant to be seen by the jury in shackles or other devices of physical restraint").

■ The exceptional circumstances that typically lead courts to consider manacling a defendant are those behaviors which indicate "good grounds for believing such defendants might attempt to do violence or to escape during their trials." *Tunget, supra,* at 836, 198 S.W.2d 785. For example, in *Tunget,* our predecessor Court found no error in shackling a defendant who was on trial for murdering an assistant warden in the course of a brazen escape attempt from the penitentiary. 198 S.W.2d at 837. More recently, in *Conley, supra,* we opined that the trial judge exercised sound discretion by restraining a defendant in leg irons, the defendant having escaped during a pre-trial hearing. 959 S.W.2d at 78.

■ A trial judge, faced with a belligerent defendant, has a number of options at his or her disposal to ensure safety and decorum in the courtroom. These options include physical restraints, citations for contempt, and in some circumstances, removal from the courtroom until the defendant regains composure. *Illinois v. Allen,* 397 U.S. 337, 344, 90 S.Ct. 1057, 1061, 25 L.Ed.2d 353 (1970). An increase in the number and placement of security officers may also safeguard against any anticipated violent or disruptive behavior. *Holbrook v. Flynn,* 475 U.S. 560, 563, 106 S.Ct. 1340, 1343, 89 L.Ed.2d 525 (1986); *Hodge v. Commonwealth,* 17 S.W.3d 824, 839 (Ky. 1999).

In the present matter, Appellant's belligerent conduct prior to trial certainly raised a serious issue of courtroom security. Furthermore, based on Appellant's refusal to assure the trial court that he would not engage in any physical or violent outbursts during trial, the trial court was well within its discretion and had good cause to order Appellant restrained throughout the course of the trial.

### III. Virtual Child Pornography

■ Appellant contends the Commonwealth failed to prove that the images seized from his computer portrayed real, living children, as opposed to computer-generated or "virtual" child pornography. Appellant first raised this issue during pretrial motions, then later as part of a motion for a directed verdict, asking the trial court to declare unconstitutional the statutes relating to possession and distribution of matter portraying a sexual performance by a minor. KRS 531.335 and KRS 531.340.

The basis for Appellant's claim stems from the United States Supreme Court's decision in *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002), which found certain provisions of the Child Pornography Prevention Act of 1996 unconstitutional. Specifically, the Supreme Court held that language contained in 18 U.S.C. § 2256(8)(B) (1997), criminalizing possession of pornographic material which "appears to be" a minor engaging in sexually explicit conduct, was impermissibly overbroad. *Free Speech Coalition*, 535 U.S. at 258, 122 S.Ct. 1389. The Supreme Court reasoned that the sweeping language of § 2256(8)(B) could possibly prohibit possession of images that were not the direct product of child exploitation. *Id.* at 250–55, 122 S.Ct. 1389.

In his appeal before this Court, Appellant does not challenge the constitutionality of KRS 531.335 and KRS 531.340. Instead, Appellant raises a question alluded to in *Free Speech Coalition:* what type and quantum of evidence is required to prove that pornographic images found in an accused's possession depict "real" children? The Court of Appeals made reference to this issue in *Hause v. Commonwealth*, 83 S.W.3d 1 (Ky.App.2002), stating:

> "[T]he burden is upon the prosecution to prove the accused guilty beyond a reasonable doubt of every essential element of the crime charged, [and] an accused has the right to rely upon failure of the prosecution to establish such proof." In a prosecution brought against an individual accused of violating KRS 531.340, it is incumbent upon the Commonwealth to prove beyond a reasonable doubt that the "person" depicted in the matter portraying a minor in a sexual performance is a *real* person.

*Id.* at 8–9, quoting *Whorton v. Commonwealth*, 570 S.W.2d 627, 629 (Ky.1978) (emphasis added).

Appellant notes that at trial, Detective French testified that he did not know if the seized images depicted "virtual" child pornography. No expert testified regarding whether the images portrayed actual children. However, in the wake of *Free Speech Coalition*, several courts have ruled that expert testimony is not required to establish that pornographic images depict real rather than "virtual" children. *See United States v. Farrelly*, 389 F.3d 649 (6th Cir.2004); *United States v. Kimler*, 335 F.3d 1132 (10th Cir.2003), *cert. denied*, 540 U.S. 1083, 124 S.Ct. 945, 157 L.Ed.2d 759 (2003); *United States v. Richardson*, 304 F.3d 1061 (11th Cir.2002), *cert. denied*, 537 U.S. 1138, 123 S.Ct. 930, 154 L.Ed.2d 832 (2003). "Juries are still capable of distinguishing between real and virtual images; and admissibility remains within the

province of the sound discretion of the trial judge." *Farrelly, supra,* at 655.

In the present matter, no evidence suggests that the time has arrived when experts are needed to distinguish real from virtual pornography. The jurors themselves viewed the images upon which they based Appellant's conviction. Therefore, under the standard established in *Commonwealth v. Benham,* 816 S.W.2d 186, 187 (Ky.1991), we cannot say it was "clearly unreasonable" for the jury to find guilt, or that Appellant is entitled to a directed verdict of acquittal.

The judgment of the Marshall Circuit Court is affirmed.

LAMBERT, C.J., COOPER, GRAVES, SCOTT and WINTERSHEIMER, J.J. concur.

KELLER, J., dissents by separate opinion in which JOHNSTONE, J., joins.

Dissenting Opinion by Justice KELLER.

Appellant did not exhibit the sort of behavior that constitutes "special" or "extraordinary" circumstances sufficient to have been left in shackles in the presence of the jury. For example, in *Tunget v. Commonwealth,*[1] to which the majority makes only fleeting reference, our predecessor court noted that the defendant "was a man of demonstrated desperation."[2] The court then elaborated extensively on this point:

He had already been convicted of murder and had been given a life sentence. Before he had served a year of the time necessary to qualify him for parole, he had procured a gun from the outside and in nerveless fashion had herded four stalwart guards into his own cell. Thereafter, he had shot and killed the associate warden and had then shot at or through two other guards in pursuing his raging, reckless intent to escape, regardless of the resulting consequences. Confinement had not curbed him, courtroom solemnity had not cowed him, armed guards had neither daunted nor discouraged him.[3]

Only after recounting such extreme facts did the court admit that the defendant's case was "exceptional," thus allowing a deviation from the rule that a defendant is not to be shackled in the presence of the jury. We have repeatedly limited this practice to instances where there is danger of violence from the defendant,[4] where the defendant has tried to escape,[5] or both.[6]

There is no evidence of either of these factors in this case. Instead, Appellant only grew mildly upset, "threw a little fit," stated that he wanted to be tried *in absentia* rather than be tried in shackles, and, when questioned about what his behavior would be upon his return to the courtroom, stated that he was not sure. Appellant's mildly contentious behavior arose *only* because the bailiff intended—*from the beginning and before any of the behavior cited in the majority opinion*—to leave Appel-

1. 303 Ky. 834, 198 S.W.2d 785 (1947)

2. *Id.* at 786.

3. *Id.*

4. *See, e.g., Marion v. Commonwealth,* 269 Ky. 729, 108 S.W.2d 721, 724 (1937) (allowing shackles where the defendant was "a confessed desperado, who had shown no regard for the property or life of others").

5. *See, e.g., Hill v. Commonwealth,* 125 S.W.3d 221 (Ky.2004) (allowing shackles where the defendant had repeatedly from prison); *Commonwealth v. Conley,* 959 S.W.2d 77 (Ky. 1997) (allowing shackles on defendant who had fled courtroom and escaped during arraignment).

6. *See, e.g., Tunget,* 303 Ky. at 837, 198 S.W.2d at 786.

lant in shackles for the jury to see. The majority admits that shackling a defendant in front of the jury implicates his constitutional right to a presumption of innocence, and that this right may only be infringed in certain circumstances. Yet the majority opinion amounts to an approval of a practice whereby a defendant is penalized for growing upset at an unnecessary proposed violation of this constitutional right and the punishment is the same action that would have otherwise violated the constitutional right. In effect, the majority opinion bootstraps away Appellant's admittedly limited right not to be seen in shackles by the jury simply because he grew *understandably* upset when he was informed that he was to be forced to wear shackles in the presence of the jury before he had done anything to warrant such treatment. It is hard to imagine a more absurd situation.

"Our predecessor court noted that shackles would be justified in less than 'one murder case out of an average hundred coming to trial."'[7] Surely this is not such a case. For this reason, I respectfully dissent.

JOHNSTONE, J., joins this dissenting opinion.

---

7. *Hill v. Commonwealth*, 125 S.W.3d 221, 233 (Ky.2004) (quoting *Tunget v. Commonwealth*, 303 Ky. 834, 198 S.W.2d 785, 786 (1946)).