# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: FEBRUARY 20, 2020
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

## 2018-SC-000535-MR

GLEN A. DAVIS                 APPELLANT

V.           ON APPEAL FROM SCOTT CIRCUIT COURT
HONORABLE PAUL F. ISAACS, JUDGE
NO. 13-CR-00179

COMMONWEALTH OF KENTUCKY           APPELLEE

### MEMORANDUM OPINION OF THE COURT

### AFFIRMING

Glen A. Davis appeals as a matter of right from the Scott Circuit Court judgment sentencing him to seventy years in prison for four counts of use of a minor in a sexual performance. On appeal, Davis argues (1) the trial court erred by denying the motion to sever the four counts of use of a minor in a sexual performance from other charges for which he was acquitted including incest and rape; (2) the trial court erred by admitting the four photos into evidence; (3) the trial court erred by denying Davis's request for a lesser included offense instruction; (4) the trial court erred in denying the motion for a mistrial due to a *Brady* violation;[1] and (5) the jury selection procedures were improper.

---

[1] *Brady v. Maryland*, 373 U.S. 83 (1963).

## FACTS AND PROCEDURAL HISTORY

Glen A. Davis and his wife, Megan Davis, were married in 1995. After moving to Scott County, the couple had two daughters: M.D., born September 23, 2000, and a second daughter born in 2005. Their marriage began to fall apart and in 2012 Davis informed Megan that he wanted a divorce. Thereafter Megan noticed distressing changes in M.D.'s behavior. She became angry, moody, and afraid. She was very reluctant to spend time with Davis. M.D. was treated twice at a psychiatric facility for her self-harming behaviors, which included clawing and scratching at her own skin and banging her head against a wall. Upon being questioned by Megan in January 2013, M.D. disclosed that she had been abused. Megan reported the allegations to law enforcement on January 31, 2013.

Police opened an investigation and arranged an interview for M.D. at a children's advocacy center. After viewing this interview via closed circuit television, a detective requested the family laptop and camera from Megan. The family laptop had four different user accounts — one for each family member. Police discovered four deleted images of what appeared to be child pornography dated January 13, 2010. They depicted a young female lying on a table exposing her genitals. Three of the four photos contained embedded data which indicated they were taken with the family camera.

Megan positively identified M.D in one of the photos and determined that they were taken during winter in the family home because she could see a portion of one of the family's seasonal place mats in the photos, as well as the

2

wallpaper border in the background. The Commonwealth's digital forensic expert could not determine when the photos were uploaded from the camera to the laptop, how many times they were viewed, which of the four family accounts the images existed on before being deleted, or when they were deleted.

At trial M.D. testified regarding several instances of abuse. She stated that Davis touched her "private area" one afternoon in March 2007 when she was six years old. She also testified that in 2010, when she was nine years old, Davis photographed her genitals and he told her that he did so because he wanted her to see what she looked like "down there." She identified herself in the photos and also identified the walls and seasonal place mats on the table. She stated that Davis uploaded the photos to the family laptop and that they looked at them together. M.D. also testified that Davis raped her when she was home sick from school sometime in December 2012 when she was twelve years old. She stated that Davis overpowered her, and she was in excruciating pain during the rape. She was evaluated by the Children's Advocacy Center in Lexington and her physical exam was normal.

Davis was tried for four counts of use of a minor in a sexual performance and one count each of first-degree sexual abuse, incest, and second-degree rape. He testified at trial and denied all of M.D.'s allegations. The jury convicted him of four counts of use of a minor in a sexual performance and acquitted him on all other charges. The jury recommended a sentence of twenty years for each count to run consecutively for an eighty-year sentence.

The trial court sentenced Davis to the statutory maximum of seventy years in prison and this appeal followed.

## ANALYSIS

Davis appeals as a matter of right, raising the following issues: (1) the trial court erred by denying the motion to sever the four counts of use of a minor in a sexual performance from the rest of the charges; (2) the trial court erred by admitting the four nude photos of M.D. into evidence; (3) the trial court erred by denying Davis's request for a lesser included offense instruction; (4) the trial court erred in denying the motion for a mistrial due to a discovery violation, and (5) the jury selection procedures were improper.

### I.    The trial court properly denied the motion to sever.

Prior to trial, Davis filed a motion to sever the counts of use of a minor in a sexual performance from the sexual abuse, incest, and rape charges, arguing that the use of a minor in a sexual performance charges were too different in character from the remaining charges. After a hearing, the trial court denied the motion. Davis renewed his motion to sever at trial, but again it was denied. He argues that this was error.

An appellate court reviews a trial court's denial of a motion to sever for an abuse of discretion. A trial court abuses its discretion if its decision was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999). Davis argues that because nothing in the photos indicates that the young girl depicted therein had been physically abused or touched inappropriately, and the remaining

4

counts in the indictment all involved allegations that Davis sexually assaulted M.D. in varying ways, severance was required.

Kentucky Rule of Criminal Procedure (RCr) 6.18 permits two or more offenses to be charged in the same indictment provided that "the offenses are of the same or similar character or are based on the same acts or transactions connected together or constituting parts of a common scheme or plan." Additionally, RCr 8.31 mandates when severance is necessary, and states that "[i]f it appears that a defendant or the Commonwealth is or will be prejudiced by a joinder of offenses . . . , the court shall order separate trials of counts . . . , or provide whatever other relief justice requires." Prior to trial a defendant seeking severance must show that joinder would be unduly prejudicial. *Cohron v. Commonwealth*, 306 S.W.3d 489, 493 (Ky. 2010). "[A] defendant must prove that joinder would be so prejudicial as to be unfair or unnecessarily or unreasonably hurtful." *Ratliff v. Commonwealth*, 194 S.W.3d 258, 264 (Ky. 2006). "If evidence from one of the offenses joined in the indictment would be admissible in a separate trial of the other offenses, the joinder of offenses generally will not be prejudicial." *Cohron*, 306 S.W.3d at 493.

Kentucky Rule of Evidence (KRE) 404(b) provides that

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible:
>
> > (1) If offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]

5

"[E]vidence of similar acts perpetrated against the same victim are almost always admissible...." *Harp v. Commonwealth*, 266 S.W.3d 813, 822 (Ky. 2008). "[E]vidence of other assaults perpetrated by a defendant against the same victim is generally admissible to prove intent and motive with respect to the subsequent assault." *Ratliff v. Commonwealth*, 194 S.W.3d at 264. Similarly, because evidence of the sexual abuse, rape, and use of a minor in a sexual performance would be mutually admissible in separate trials, we cannot say that joinder was prejudicial.

As Davis states, sexual abuse, incest and rape require some type of contact or touching and using a minor in a sexual performance does not contemplate physical contact. However, the offenses are appropriately joined under RCr 6.18, "constituting parts of a common scheme or plan" to commit sexual crimes against his daughter. Because evidence of the use of a minor in a sexual performance would have been admissible in a separate trial for sexual abuse and rape, and vice versa, the joinder of offenses was not prejudicial and therefore the trial court did not abuse its discretion.

Finally, Davis emphasizes that his seventy-year sentence, despite being acquitted of the rape, sexual abuse and incest charges, highlights the prejudice that resulted from joinder of all offenses. However, when ruling on a motion to sever, the trial court is tasked with assessing potential prejudice from joining offenses *prior to trial.* *Cohron*, 306 S.W.3d at 493. Although Davis received a lengthy sentence despite being acquitted on some charges, we cannot say that

the harshness of the penalty means the trial court abused its discretion in ruling on Davis's pre-trial motion to sever.

## II. The admission of the photos was not an abuse of discretion.

Davis argues that the trial court erred in admitting the four photos of M.D. into evidence. He argues that while the photos were relevant, they were unduly prejudicial. We review evidentiary issues for an abuse of discretion. *Clark v. Commonwealth*, 567 S.W.3d 565, 576 (Ky. 2019), requires this Court to consider whether the trial court's decision was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles."

Davis was charged with four counts of use of a minor in a sexual performance. Kentucky Revised Statute (KRS) 531.310(1) states that "[a] person is guilty of the use of a minor in a sexual performance if he employs, consents to, authorizes or induces a minor to engage in a sexual performance." KRS 531.300(6) defines "sexual performance" as "any performance or part thereof which includes sexual conduct by a minor." "Performance" is defined as "any play, motion picture, photograph or dance. Performance also means any other visual representation exhibited before an audience." KRS 531.300(5).

Davis continually objected to the admissibility of the photos. Prior to trial, the trial court conducted an in camera review of the four photos to determine how the photos would be used during trial. In a written order, the trial court described each photo and determined that each was admissible. The trial court reasoned that the photos were probative because each

demonstrated that (1) an offense was committed (2) during a particular time (when M.D. was a minor), both of which constitute necessary proof of the crimes.

Davis criticizes the reliability of the photos, stating that because the photos only show the lower half of the body it could be any young female in the photos. Davis highlights that M.D. was biased toward him based on her testimony that she was angry at him about the divorce. He also points out that only seventeen-year-old M.D. identified the then nine-year-old M.D. in the photos. However, the record indicates that Megan, M.D.'s mother, identified M.D. as the girl in one of the photos.[2] Further, "[a]ssessing the credibility of a witness and the weight given to her testimony rests within the unique province of the jury . . . ." *Ross v. Commonwealth,* 531 S.W.3d 471, 477 (Ky. 2017) (citations omitted). The jury was charged with deciding whether M.D.'s identification was credible and how much weight to afford her testimony.

All photos are subject to a balancing test pursuant to KRE 403. Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of undue prejudice . . . ." KRE 403. Probative photos are admissible "unless they are so inflammatory that their probative value is substantially outweighed by their prejudicial effect." *Adkins v. Commonwealth,* 96 S.W.3d 779, 794 (Ky. 2003). There is no doubt, and Davis admits, that the photos are relevant to the crimes committed. Likewise, the probative value of

---

[2] As noted, Megan also identified the seasonal place mats on the table and the wallpaper border as establishing that the photos were taken in the family home.

8

the photos cannot be denied. "The 'probative value' or 'probative worth' of evidence is a measure of how much the evidence tends to make the fact it is introduced to prove more or less probable." *Hall v. Commonwealth*, 468 S.W.3d 814, 823 (Ky. 2015). Davis highlighted M.D.'s potential lack of credibility, making the photos essential to proving the crimes. A judge must consider the photos "within the full evidentiary context of the case, giving due regard to other evidence admitted . . . to ascertain each item's . . . probative worth for purposes of weighing that value against the risk of prejudice posed by the evidence." *Id.* at 824.

Here, the photos constitute physical evidence of the crime itself. When paired with M.D.'s testimony, the photos establish that Davis used M.D. in a sexual performance and violated KRS 531.310. Obviously, the photos were prejudicial, but this prejudice did not outweigh their probative value. Because the photos were relevant and probative, they were properly admitted into evidence.

As for the admission of all four photos, each photo was necessary to prove each of the four counts charged in the indictment. In *Williams v. Commonwealth*, 178 S.W.3d 491, 493 (Ky. 2005), the appellant was convicted of four counts of use of a minor in a sexual performance for photos he took of his daughter. He argued that the photographs should have been consolidated into one count. *Id.* at 494. The Court determined that the singular form of "photograph" in the definition of performance, read in conjunction with "any," indicated that the legislature intended prosecution for each differing

9

photograph. *Id.* at 495. "Accordingly, a person who generates differing and multiple prohibited photographs or causes a child to engage in the creation of such photographs commits multiple offenses of KRS 531.310, even though each such differing photograph involves the same subject captured in a narrow timeframe." *Id.*

While the photos are not in the record transmitted to this Court, the trial court provided descriptions of each photo.[3] The photos are not substantially different, but each photo depicts elements that corroborate the identification of the female and where the photos were taken. For example, the first description states that the photo displays a female in a blue vest, which M.D. used to identify herself because she once owned a blue vest. The description of the second photo references the blue vest, in addition to a green and white striped shirt — an element not present in the first photo. Also, the descriptions of the third and fourth photos indicate the female is lying on a holiday place mat and the place mat is not visible in the other photos. The holiday place mat is important because it further establishes that the photos were taken in the family home. Therefore, the admission of each photo was necessary to prove the elements of each individual count. Further, the place mats and other background items in the photos corroborated M.D.'s allegations against Davis.

---

[3] The record indicates that after each photo was introduced into evidence by the Commonwealth it was passed to the jury for discreet viewing.

The photos prove the elements necessary for each count of the use of a minor in a sexual performance. Therefore, the photos were properly admitted, and the trial court did not abuse its discretion.

## III. No lesser included offense instruction was required.

Davis made an oral motion requesting an instruction on the lesser included offense of possession or viewing of matter portraying a sexual performance by a minor. KRS 531.335. He argued that the evidence justified an instruction on the lesser included offense. The final jury instructions did not include Davis's requested instruction, and he argues that this was error.

When a trial court declines to give an instruction on a specific claim, the decision is reviewed for an abuse of discretion. *Sargent v. Schaffer*, 467 S.W.3d 198, 204 (Ky. 2015). On appellate review, we must determine whether the trial court's decision was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *English*, 993 S.W.2d at 945. Trial courts must give a lesser included offense instruction "if, but only if, considering the totality of the evidence, the jury might have a reasonable doubt as to the defendant's guilt of the greater offense, yet believe beyond a reasonable doubt that he is guilty of a lesser offense." *Jenkins v. Commonwealth*, 496 S.W.3d 435, 449 (Ky. 2016). To determine this issue, we must delineate between the two crimes.

"A person is guilty of use of a minor in a sexual performance if he employs, consents to, authorizes or induces a minor to engage in a sexual performance." KRS 531.310(1). "Sexual performance" means "any performance or part thereof which includes sexual conduct by a minor." KRS

11

531.300(6). Photographs constitute "performance" under the statute, and sexual conduct includes "[t]he exposure, in an obscene manner, of the unclothed . . . female genitals . . . or the female breast . . . ." KRS 531.300(4)(d).

Davis argues that KRS 531.335 is a lesser included offense of the use of a minor in a sexual performance. KRS 531.335 provides:

1) A person is guilty of possession or viewing of matter portraying a sexual performance by a minor when, having knowledge of its content, character, and that the sexual performance is by a minor, he or she
   a) Knowingly has in his or her possession or control any matter which visually depicts an actual sexual performance by a minor person;

Davis maintains that because the photos showed a young female from below the chest, it was impossible to identify her. He argues that only M.D. was able to identify the pictured female, and that there were issues with M.D.'s credibility because the jury rejected her testimony that Davis sexually assaulted her. He further highlights that (1) M.D. testified that she was angry at Davis because of the divorce and would do anything for her mother; (2) the computer and camera were both in Megan's possession when the allegations of sexual misconduct were made; (3) Megan had a financial motive to implicate Davis because of her desire to obtain funds from his retirement account in the divorce; and (4) M.D. was the only witness that identified the female in the photos and she possessed an obvious bias toward Davis. He states that this evidence demonstrates that a jury could reasonably doubt whether he used

12

M.D. in a sexual performance in violation of KRS 531.310, and instead believe

that he merely had the photos in his possession.

The Court of Appeals considered whether possession of matter portraying

a sexual performance by a minor is a lesser included offense of using a minor

in a sexual performance in *Westerfield v. Commonwealth*, No. 20060-CA-

000592-MR, 2007 WL 1196462 (Ky. App. Apr. 6, 2007). In *Westerfield,* the

defendant was charged and convicted of both crimes, and he argued on appeal

that the convictions violated double jeopardy. The Court of Appeals held that

> KRS 531.310 requires [the defendant]: (1) to employ,
> consent, authorize or induce; (2) a minor; (3) to engage in a
> sexual performance. The elements of KRS 531.335 are to: (1)
> knowingly; (2) have in possession or control; (3) any matter
> visually depicting an actual sexual performance by a minor;
> and (4) with knowledge of the matter's content, character,
> and that the sexual performance is by a minor. Westerfield
> concedes that KRS 531.310 requires additional proof of
> consent, authorization, or inducement for the minor to
> engage in a sexual performance. KRS 531.335 requires
> possession of the material depicting the sexual performance
> which KRS 531.310 does not. As a result, KRS 531.335 is
> not a lesser included offense of KRS 531.310. The offense of
> use of a minor in a sexual performance was completed when
> Westerfield induced A.M.R. to remove her shirt and
> photographed her. His decision to retain the photograph in
> his possession was a distinct step that constituted a
> separate criminal offense under 531.335.

*Id.* at *3.

These crimes require proof of different facts and constitute two separate

crimes. "An individual can induce a child to engage in a sexual performance

without creating any lasting media or possessing any record portraying the

event, and an individual may knowingly possess a depiction of a minor

engaging in a sexual performance without playing any role in the creation of

13

the media." *Meade v. Commonwealth*, 2014 WL 2809815, *4 (Ky. June 19, 2014). Therefore, possession of matter portraying a sexual performance by a minor is not a lesser included offense to the use of a minor in a sexual performance.

Applying the above reasoning to Davis's case, possession of the photos is a separate crime from using a minor in a sexual performance. The offense of using a minor in a sexual performance was completed when Davis induced M.D. to expose herself and photographed her. Uploading the photos to the family laptop indicates possession, constituting an offense under KRS 531.335.[4] He also committed the offense when he viewed the photos with M.D. In actuality, Davis could have been charged with both crimes. "An instruction on a separate, uncharged, but 'lesser' crime — in other words, an alternative theory of the crime — is required only when a guilty verdict as to the alternative crime would amount to a defense to the charged crime, *i.e.*, when being guilty of both crimes is mutually exclusive." *Hudson v. Commonwealth*, 202 S.W.3d 17, 22 (Ky. 2006).

In this case, taking the photos was not required for the crime of using a minor in a sexual performance based on the statutory definitions provided in KRS 531.300. Merely possessing the photos, and thus being guilty of violating KRS 531.335, does not constitute a defense for using a minor in a sexual

---

[4] The digital forensic investigator determined that the photos in question were uploaded to and later deleted from the family laptop but could not state when they were deleted. M.D. also testified that she and Davis looked at the photos on the laptop together.

performance. In sum, KRS 531.335 is not a lesser included offense of using a minor in a sexual performance and the trial court did not err in denying Davis's request for an instruction on possession.

## IV. The trial court did not err in denying Davis's motion for a directed verdict.

Davis also argues that the trial court erred in failing to grant his motion for directed verdict because the evidence presented at trial was insufficient to support a guilty verdict for use of a minor in a sexual performance. A trial court's ruling on a motion for directed verdict is reviewed under the following standard:

> When presented with a motion for a directed verdict, a court must consider the evidence as a whole, presume the Commonwealth's proof is true, draw all reasonable inferences in favor of the Commonwealth, and leave questions of weight and credibility to the jury. The trial court is authorized to grant a directed verdict if the Commonwealth has produced no more than a mere scintilla of evidence; if the evidence is more than a scintilla and it would be reasonable for the jury to return a verdict of guilty based on it, then the motion should be denied. On appellate review, the standard is slightly more deferential; the trial court should be reversed only if it would be clearly unreasonable for a jury to find guilt.

*Acosta v. Commonwealth*, 391 S.W.3d 809, 816 (Ky. 2013) (citations omitted).

Davis points to the following evidence to suggest that the jury could have a reasonable doubt as to his guilt: (1) the photos show a female from below the chest, making it impossible to identify her; (2) M.D. was the only witness to positively identify the female;[5] (3) M.D. lacked credibility because the jury

---

[5] As noted, Megan, M.D.'s mother, identified the girl depicted in one of the photos as M.D.

rejected her testimony that Davis sexually assaulted her, evidenced by an acquittal of all other charges; (4) the camera and laptop were in Megan's possession when the allegations arose; (5) Megan had a financial motive to implicate Davis in criminal activity; and (6) M.D. expressed her anger toward Davis and loyalty to her mother. However, the trial court must presume that all of the Commonwealth's evidence is true. On appellate review, this Court can only reverse the trial court if it would be clearly unreasonable for a jury to find guilt. Based on the evidence presented, we cannot say it would have been unreasonable for a jury to find Davis guilty of the four counts of use of a minor in a sexual performance.

Davis claims that, even when viewed in a light most favorable to the Commonwealth, the evidence presented was insufficient to support his convictions for use of a minor in a sexual performance. We disagree. There was sufficient evidence such that a reasonable juror could find guilt. M.D. testified and identified herself in the four photos. As this Court stated in *King v. Commonwealth*, 472 S.W.3d 523, 526 (Ky. 2015), "[t]he testimony of a single witness is enough to support a conviction. Our courts have long held that a jury is free to believe the testimony of one witness over the testimony of others." (Citations omitted).

Thus, M.D.'s sworn testimony that Davis staged the photos of her engaged in a sexual performance was sufficient. M.D.'s testimony was further corroborated by the photos themselves, Megan's testimony that Davis was home alone with M.D. when the photos were taken, and the digital forensic

16

evidence suggesting that the photos were uploaded to and subsequently deleted from the family laptop. Given the evidence presented, the trial court did not err in denying the motion for directed verdict.

## V. The trial court properly denied the motion for a mistrial because any discovery violation was properly cured by an admonition to the jury.

Davis argues that the trial court erred in failing to grant a mistrial based on the introduction of previously undisclosed evidence. At trial Megan testified that she used the computer for work-related purposes and claimed that the only time the computer left her possession was when she let Davis borrow it in April 2012 so that he could erase files prior to Megan receiving the computer as part of their divorce. Davis objected to this testimony because evidence of allegations that he had deleted files on the laptop during this time frame had not been previously disclosed by the Commonwealth. Davis asserts that had he known about this evidence, he would have had his computer experts examine the computer for evidence of file deletions that may have occurred during April 2012.

The Commonwealth acknowledged that it did not disclose this information to the defense because it learned of this time frame within the "last month or two" during trial preparation. Davis argued that this evidence potentially would have been exculpatory in nature or may have led to discovery of exculpatory or impeachment evidence. Accordingly, Davis moved for a mistrial because the withholding of the evidence impacted his ability to have a

fair trial. The trial court denied the motion, noted Davis's objection and permitted Megan's testimony to continue.

At another bench conference nearly two hours after Megan's testimony Davis restated his motion for mistrial, moved for an admonition and acknowledged that he should have requested an admonition previously. The parties agreed to language for the admonition, and further agreed that the Commonwealth would instruct Megan not to mention the April 2012 file deletions any further. The jury was admonished as follows:

> There was testimony from the witness this morning that around the time of the divorce that the defendant asked to get the laptop so he could delete some files and give her more room. You are not to consider that testimony in any manner in your deliberations. It's though it never happened.

Davis argues that he was deprived of a fair trial because the Commonwealth failed to reveal that Megan planned to provide the April 2012 time period in her testimony. Whether this issue is properly preserved is questionable. The Commonwealth asserts that Davis never filed a written request pursuant to RCr 7.24 requiring the Commonwealth to disclose certain items. However, even if the issue was not properly preserved, any error was cured by the admonition.

"A jury is presumed to follow an admonition to disregard evidence and the admonition thus cures any error." *Johnson v. Commonwealth*, 105 S.W.3d 430, 441 (Ky. 2003). The trial court admonished the jury according to language agreed upon by both parties, directing the jury to disregard the

18

testimony about removing files from the laptop. There is nothing to suggest that the jury was unable to follow the trial court's admonition.

Even without the admonition, it is doubtful that we would find reversible error. The charges in this case stem from four deleted photographs recovered from the family computer. Any information about removing or deleting files from the computer was relevant from the outset of this case. The Commonwealth's expert, an Assistant Chief of the Georgetown Police Department trained in computer forensics, stated that no one knew when the photos were deleted. The relevance of the laptop and photo deletion, paired with Davis being a party to the exchange that took place in April 2012 with Megan regarding possession of the laptop, makes it difficult to believe that Megan's testimony came as a total surprise. The laptop contained the primary evidence of illegal activity and has been central to the allegations from the start. Both parties had access to finding out when the laptop was in whose hands and were aware of its relevance.

Davis also highlights that he was not permitted to cross-examine Megan with respect to her testimony regarding April 2012 because the trial court admonished the jury to ignore that portion of her testimony. However, Davis specifically requested this admonition. Further, it was not until the Commonwealth concluded its direct examination of Megan, nearly two hours after the April 2012 statement, that Davis requested the admonition. "Generally, a party is estopped from asserting an invited error on appeal." *Quisenberry v. Commonwealth,* 336 S.W.3d 19, 37 (Ky. 2011). Invited errors

"amount to a waiver, *i.e.*, invitations that reflect the party's knowing relinquishment of a right, are not subject to appellate review." *Id.* at 38. Any lack of opportunity to question Megan regarding the time frame was initiated by Davis himself, and he cannot now complain that the admonition deprived him of the opportunity to cross-examine Megan regarding the statement.

Davis also argues that the trial court erred in denying his motion for a mistrial. As this Court stated in *Gray v. Commonwealth*, 480 S.W.3d 253, 273 (Ky. 2016),

> The decision to declare a mistrial is properly within the sound discretion of the trial court. A mistrial is "an extreme remedy and should be resorted to only when there appears in the record a manifest necessity for such an action or an urgent or real necessity." A "manifest necessity" can be understood as to be an urgent need for a new trial in consideration of the totality of the circumstances.

The trial court did not abuse its discretion in denying the motion for a mistrial because any error was cured by the admonition. During his initial objection to Megan's testimony, Davis immediately requested a mistrial without considering other options, such as a continuance to consult with co-counsel or his own expert, or an admonition. There were other remedies available instead of resorting to an extreme remedy reserved for cases of manifest necessity. In considering the totality of the circumstances and evidence presented, a mistrial was not warranted.

## VI. The trial court's jury selection procedures were proper.

Davis further argues that the trial court's jury selection procedures were improper. The trial court summoned one hundred sixteen jurors and only

seventy-eight appeared. Davis requested a delay of the trial to allow the sheriff to locate some of the missing jurors. The sheriff located eight additional jurors, placing eighty-six potential jurors in the jury pool. Davis requested a continuance to permit the sheriff to locate even more jurors, but the trial court denied the motion and began *voir dire.*

After informing the jury of the nature of the charges, the trial court excused seven potential jurors for cause.[6] In a bench conference, Juror A reported that something happened to her in January 1969, but that she put it behind her years ago. She insinuated that she was a victim of some type of sexual crime nearly fifty years ago. The trial court recognized that, based on Juror A's demeanor, the events were troubling to her. The trial court questioned whether she would be able to decide the issues solely on this case and not based on her past, and she recognized that the case is about someone else's life, not what happened to her. Upon further questioning by the parties, Juror A stated repeatedly and unequivocally that she could separate her personal experience from the case. She said that she could not punish someone else for what happened to her, and that she could decide guilt or innocence.

Davis moved to strike Juror A arguing that she would be unable to render a fair verdict based on her past experiences. The trial court determined that she could be impartial but noted that it was a close question. The trial

---

[6] These jurors reported that they could not be impartial because they or close relatives had been victims of similar crimes, or they expressed generalized but extreme discomfort with the subject matter.

21

court was convinced by her repetitive assertions that "this is not about me, this is about this particular case" that Juror A would decide the case based on what happened in the courtroom, not on her personal experiences. Davis renewed his objection.

Nineteen jurors were stricken for cause and thirty-two advanced to the peremptory challenge phase of jury selection. Davis exercised a peremptory strike on Juror A. Once all strikes were utilized, eighteen jurors remained. Davis now argues that because he had to use a peremptory strike on Juror A, who should have been stricken for cause, that he was prejudiced by being unable to identify an alternate juror that he would have stricken.[7]

RCr 9.36(1) provides that the trial court shall excuse a juror for cause when "there is reasonable ground to believe that the prospective juror cannot render a fair and impartial verdict." A trial court's decision "to exclude a juror for cause is based on the totality of the circumstances, not on a response to any one question." *Fugett v. Commonwealth*, 250 S.W.3d 604, 613 (Ky. 2008). A determination of whether to exclude a juror for cause is reviewed for an abuse of discretion. *Little v. Commonwealth*, 422 S.W.3d 238, 241 (Ky. 2013). The test for abuse of discretion is whether the trial court's decision was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *English*, 993 S.W.2d at 945.

---

[7] It is unclear why Davis could not have identified who he would have stricken because at the time he exercised peremptory challenges he did not know whether the Commonwealth would use some or all of their challenges or who they would challenge. Several jurors remained at that juncture who Davis could have identified.

In *Little,* this Court summarized the appropriate analysis where a defendant has moved to strike a juror because that juror had been the victim of a similar crime:

> "[T]his Court has consistently held that the mere fact that a juror or her family member has been the victim of a crime similar to the one charged against the defendant does not, in and of itself, justify that juror's excusal. *Brown v. Commonwealth,* 313 S.W.3d 577, 598 (Ky.2010) (juror victim of burglary); *Richardson v. Commonwealth,* 161 S.W.3d 327, 330 (Ky.2005) (juror victim of sexual abuse); *Woodall v. Commonwealth,* 63 S.W.3d 104, 118 (Ky.2001) (juror sister of rape victim); *Hodge v. Commonwealth,* 17 S.W.3d 824 (Ky.2000) (citing several earlier cases holding similarly). In those cases, additional evidence of bias is required, with "[o]bvious factors bearing on the likelihood of bias [being] the similarity between the crimes, the length of time since the prospective juror's experience, and the degree of trauma the prospective juror suffered." *Brown,* 313 S.W.3d at 598. Ultimately, "[i]t is the totality of all the circumstances, however, and the prospective juror's responses that must inform the trial court's ruling." *Id.*

422 S.W.3d at 242.

Juror A repeatedly stated that she could compartmentalize her personal experience and decide Davis's case solely upon the evidence presented. Early in the bench conference the trial court expressed its concerns over whether she was suitable for the jury, worrying that it may be difficult for Juror A to be honest. Juror A assured the trial court that she could separate what happened to her and only convict Davis if warranted by the evidence. In its lengthy findings after Davis moved to strike Juror A, the trial court assessed her answers to all questions, attitude and demeanor. Juror A never opined that she believed Davis was guilty, and when asked whether she could set aside her

23

experience and decide the case based solely upon the evidence presented, she responded affirmatively. The totality of the circumstances indicated that she could remain fair and impartial. Accordingly, the trial court did not abuse its discretion in refusing to strike Juror A for cause.

Davis also argues that the absence of venire members ultimately proved prejudicial because he was unable to identify another juror he would have stricken if he did not peremptorily strike Juror A. He asserts that this irregularity in jury selection proceedings substantially impacted his right to a fair and impartial jury.

In *Peterson v. Commonwealth*, 160 S.W.3d 730, 731 (Ky. 2005), the defendant moved for a continuance because twenty-one potential jurors failed to appear. The trial court denied the motion, holding that the fifty-three potential jurors present were sufficient. *Id.* On appeal, this Court held that the defendant could not show that he was prejudiced or demonstrate that the trial court erred in denying his motion for a continuance or dismissal. *Id.* at 732. "A mere complaint that some members of the venire did not appear for jury duty is insufficient to demonstrate the trial court erred in this matter." *Id.* Davis has not articulated how he has been prejudiced or otherwise harmed by being unable to designate a juror he would have stricken had there been more prospective jurors. The fact that he cannot identify anyone who sat on the jury who he would have peremptorily striken indicates a lack of prejudice.

Further, this Court has held that "in order to complain on appeal that he was denied a peremptory strike challenge by a trial judge's erroneous failure to

grant a for-cause strike, the defendant must identify on his strike sheet any additional jurors he would have struck." *Gabbard v. Commonwealth*, 297 S.W.3d 844, 854 (Ky. 2009). Davis did not comply with this standard. Davis was unable to identify any additional jurors he would have struck. Therefore, he cannot argue that he was prejudiced by the jury selection procedures or anyone that actually sat on the jury.

## CONCLUSION

For the foregoing reasons, the judgment of the Scott Circuit Court is affirmed.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Brent L. Caldwell
Caldwell Law Firm, PLLC

Bryce L. Caldwell
Gordan, Goetz, Johnson & Caldwell, PSC

COUNSEL FOR APPELLEE:

Daniel Jay Cameron
Attorney General of Kentucky

Joseph A. Newberg, II
Assistant Attorney General
Office of Criminal Appeals